HARRY L. BRADLEY et al., Respondents, *v.* DEGNON CONTRACTING COMPANY et al., Appellants.

Streets and highways — New York (city of) — street surface railroads — when contractors constructing subway may not build and operate surface railroad for hauling materials used in construction of subway without consent of adjacent owners, although having consent of municipal authorities and public service commission.

1. The public highways and streets are acquired and held by the state in trust for the use of all the people. For the ordinary and general transportation and traffic they are free and common to all citizens, but it is the established rule of this state that the use of a street for the purposes of a railroad, either steam or street, imposes an added burden upon and is the taking of the property of the owners of the fee of the street. The rule is not applicable when the fee of the land of the street is owned by the people and not privately.

2. To constitute a use public, it must be for the benefi  and advantage of all the public and in which all have a right to share — a use which the public have a right to freely enter upon under terms common to all. The character of the use, whether public or private, is determined by the extent of the right by the public to its use, and not by the extent to which that right is or may be exercised.

3. The defendants were engaged in the work of excavating and building a section of the subway railway in the city of New York. For the purpose of hauling certain material to the designated place for the construction of the subway, defendants constructed through one of the streets in the borough of Brooklyn for the distance of about three-quarters of a mile a railroad upon which they intended to

operate trains of dump cars hauled by steam locomotives at intervals of about twenty minutes apart during the day and part of the night. Defendants claimed the right to construct and operate this road under the statute (Rapid Transit Act [L. 1891, ch. 4], § 33, subd. 3; amd. L. 1909, ch. 498, § 8). They also obtained the consent of the public service commission and the municipal authorities. Each of the twenty plaintiffs owned a lot contiguous to the part of the street involved here, although their rights in and to the street differed in character and extent, and has not consented to or received compensation for the construction of the tramway. The operation of the trains caused vibration which was noticeable in the houses of the plaintiffs; the engines emitted coal gas which penetrated their houses if the windows were kept open, and caused disturbing noises. *Held*, that the construction of the tramway was a specific appropriation and taking of private property, incident to but not consequent upon or necessarily arising in the construction of the subway, and the facts herein compel the conclusion that the construction and operation of the tramway was not a public use. Because the tramway was unlawfully upon the street, each of the plaintiffs was entitled to recover the damages resulting from the injuries to the easements of light, air, view and access belonging to, and the annoyances, disturbances and discomforts suffered by him as the owner of an adjoining lot. (*Mahady* v. *Bushwick Railroad Co.*, 91 N. Y. 148, followed.)

*Bradley* v. *Degnon Contracting Co.*, 179 App. Div. 916, affirmed.

(Argued March 27, 1918; decided June 11, 1918.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 12, 1917, affirming a final judgment in favor of plaintiffs entered upon the report of a referee, bringing up for review an interlocutory judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herman Aaron* and *Charles Adkins Baker* for appellants. Private rights must yield to temporary inconveniences and loss arising from acts done in the public interest performed under legislative authority, and in the

absence of negligence persons pèrforming work under such authority in good faith are not liable for consequential damages. Such damages present a case of *damnum absque injuria.* (*Babbage* v. *Powers*, 130 N. Y. 281; *Bohan* v. *P. J. Gas Light Co.*, 122 N. Y. 26; *Conklin* v. *N. Y., O. & W. Ry. Co.*, 102 N. Y. 112; *Bates* v. *Holbrook*, 171 N. Y. 468.) The rule applies not only to work done for the direct·improvement of a highway but extends to any work done under legislative authority even though it be done by or for a private corporation. (*Bohan* v. *P. J. G. L. Co.*, 122 N. Y. 26.) The trial court erred in awarding damages to the plaintiffs, who had no ownership of the fee of any part of the street on which the tramway was laid. (*Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Abendroth* v. *M. R. Co.*, 122 N. Y. 1; *Reining* v. *N. Y., L. & W. R. Co.*, 128 N. Y. 167.) The Constitution of the state of New York contains no provision invalidating or in any way affecting section 25 of the Rapid Transit Act. (*Sun Publishing Assn.* v. *Mayor, etc.*, 152 N. Y. 257; *Astor* v. *Arcade R. R. Co.*, 113 N. Y. 93; *Gibbs* v. *Drew*, 16 Fla. 147; *McCleary* v. *Babcock*, 169 Ind. 228; *Hatfield* v. *Straus*, 189 N. Y. 208.) The legislature of the state of New York has absolute control over the use of streets and the placing of incumbrances or obstructions thereon, subject only to the limitation that private property shall not be taken for public use without provision for compensation. (*Bank of Chenango* v. *Brown*, 26 N. Y. 469; *People ex rel. McLean* v. *Flagg*, 46 N. Y. 404; *People* v. *Kerr*, 27 N. Y. 188; *Hoey* v. *Gilroy*, 129 N. Y. 132; *Wormser* v. *Brown*, 149 N. Y. 171.) Assuming that an abutting property owner has as such abutting owner easements of light, air and access in the street it is a matter of law that the physical incidents to the ordinary operation of a steam surface railroad through such street do not take or invade easements of light, air and access.

(*Kellinger* v. *F. S. St. R. R. Co.*, 50 N. Y. 206; *Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Kennedy* v. *M. H. & F. Traction Co.*, 178 N. Y. 508; *L. S. D. Co.* v. *City of New York*, 210 N. Y. 40; *Matter of City of New York*, 215 N. Y. 109.)

*Xenophon P. Huddy* and *A. Wheeler Palmer* for respondents.  A railroad structure consisting of ties and rails laid in a street is not an ordinary street use and constitutes an infringement of the property rights of abutting owners. (*Craig* v. *Rochester City & Brighton R. R. Co.*, 39 N. Y. 404; *Peck* v. *Schenectady Railroad Co.*, 170 N. Y. 298; *Paige* v. *Schenectady Railroad Co.*, 178 N. Y. 102; *Coatsworth* v. *Lehigh Valley R. R. Co.*, 156 N. Y. 451; *Matter of Rapid Transit Railroad Commissioners*, 197 N. Y. 81; *Hatfield* v. *Straus*, 189 N. Y. 208; 117 App. Div. 671.)   The fee being in the abutters, they were entitled to an injunction and damages (*Rasch* v. *Nassau Electric R. Co.*, 198 N. Y. 385.)   Plaintiffs' constitutional rights are violated if the statute permits defendants' acts.  The laying and operation of the railroad involved in this action was a taking of their property. (N. Y. Const. art. 1, § 6; *Craig* v. *R. C.*, etc., *R. R. Co.*, 39 N. Y. 404; *Peck* v. *Schenectady Ry. Co.*, 170 N. Y. 298; *Paige* v. *Schenectady Ry. Co.*, 178 N. Y. 102; *Coatsworth* v. *L. V. Ry. Co.*, 156 N. Y. 451; *Matter of R. T. R. R. Co.*, 197 N. Y. 81; *Story* v. *N. Y. Elev. R. R. Co.*, 90 N. Y. 122; *Lahr* v. *Met. El. R. Co.*, 104 N. Y. 268; *Abendroth* v. *Man. Elev. R. Co.*, 122 N. Y. 1; *Kane* v. *N. Y. Elev. R. Co.*, 125 N. Y. 164; *Bohm* v. *Met. Elev. R. Co.*, 129 N. Y. 576; *Hughes* v. *Met. Elev. R. Co.*, 130 N. Y. 14; *Rasch* v. *Nassau Electric R. Co.*, 198 N. Y. 385.)   Defendants' railroad did not constitute a public use. (*Matter of Eureka Basin W. & M. Co.*, 96 N. Y. 42; Lewis on Eminent Domain [3d ed.], 494; *Queens Terminal Co.* v. *Schmuck*, 147 App. Div.

502; *Matter of Deansville Cemetery Assn.*, 66 N. Y. 569; *Matter of E. B. W. & M. Co.*, 96 N. Y. 42; *Pocantico Water Works* v. *Bird*, 130 N. Y. 249.)

COLLIN, J. The trial court rendered a judgment restraining the defendants from operating " the industrial railroad now built and being operated by them in and upon 79th Street, Borough of Brooklyn, City of New York, upon, across, or in front of, the respective premises of the plaintiffs," directing the defendants to forthwith remove from that street the rails, ties and tracks of the railroad, and awarding the plaintiffs respectively damages. The Appellate Division unanimously affirmed the judgment.

The cardinal facts as found are: In 1913 the defendant Degnon Contracting Company entered into a contract with the city of New York to excavate and build a section, known as route No. 11-B, section 2, of the subway railway in the borough of Brooklyn upon Seventy-ninth street from Fourth avenue to New York bay and to deliver a quantity of the excavated material at a place to be and which was designated. The defendant Carpenter, Boxley & Herrick, Inc., was employed in the matter by the company. For the purpose of hauling the excavated material to the designated place and material for construction to the subway, the defendants constructed, through the distance of about three-quarters of a mile upon Seventy-ninth street, a railroad composed of ties of about six feet in length and six inches in depth and six inches in width which were laid at some places in the bed and at other places on the surface of the street, upon which steel rails were spiked about three feet apart. They intended to operate upon the track trains of dump cars hauled by steam locomotives at intervals of about twenty minutes apart during the day and until ten or eleven o'clock at night through a period of eighteen

to twenty-four months, in order to accomplish the work contracted. The defendants acted under and in accordance with the authority of a statute relating to the construction of the subway. The statute provided: " For the purpose of facilitating construction, and to. diminish the period of occupancy of any street for the transportation of material, any contractor acting under a contract made in pursuance of this act, or of any act supplementary hereto or amendatory hereof, may with the approval of the public service commission, lay upon or over the surface of any street, temporary tramways, to be used only for the removal of excavated materials or the transportation of materials for use in the construction; provided, however, that any such tramway shall be forthwith removed upon the direction of the public service commission; and provided, further, that this provision shall not be construed to authorize the construction or operation of any street railroad or to grant to any corporation, association or individual the right to lay down railroad tracks." (The Rapid Transit Act, Laws of 1891, ch. 4, sect. 33, subd. 3, as amended by Laws of 1909, ch. 498, sect. 8.) The public service commission for the first district authorized and approved " the construction of 36-inch tramway with necessary sidings and switches upon Seventy-ninth street from Fourth avenue to New York bay, to be used only for the removal of excavated materials and for the transportation of materials for use in the construction of the subway in connection with route No. 11-B, subject to the conditions and restrictions in said written permit more fully set forth." Thereafter the defendant company obtained from the proper municipal authorities their respective approvals and permissions for the construction of the said tramway and complied with all the requirements of the said public service commission. Each of the twenty plaintiffs owned a lot contiguous

to the part of Seventy-ninth street involved here and has not consented to or received compensation for the construction of the tramway. The operation of the trains caused vibration which was noticeable in the houses of the plaintiffs; the engines emitted coal gas which penetrated their houses if the windows were kept open, and caused disturbing noises. There is not a finding that the manner of the construction or operation was unreasonable or negligent. The people of the state acquired and held only the easement of a highway or street in the bed of Seventy-ninth street. The trial court found as a conclusion of law that the construction and operation of the railroad invaded the rights of the plaintiffs as owners of the bed of Seventy-ninth street in front of their respective premises, or of easements of light, air and access therein, and rendered the judgment stated by us.

The Special Term findings denominated the structure a " tramway " and a " railroad." The term " tramway " has not a fixed and strict meaning. (*Woodward Iron Co.* v. *Lewis*, 171 Ala. 233; *State ex rel. Western Tie & Timber Co.* v. *Pulliam*, 233 Mo. 229.) The structure was, under the findings and within the intendment of the statute, a tramway. (*South Knoxville Brick Co.* v. *Empire State Surety Co.*, 126 Tenn. 402; *Beasley* v. *Aberdeen & Rockfish R. R. Co.*, 145 N. C. 272.) Within the general statutes or the Constitution of the state, it was neither a railroad nor a street railroad. We do not undertake to define either of those terms — in truth, neither has one settled and invariable meaning. Either may have different meanings in different statutes or contexts. Each, however, denotes an enterprise created and operated for the purpose of carrying upon a fixed track passengers and freight or passengers or freight for rates or tolls, without discrimination as to those who demand the transportation. The provision of the Con-

stitution of the state forbidding the legislative authorization of the construction or operation of a street railroad except upon the condition that the designated local consents be first obtained (Art. 3, sect. 18) has no application to the statute invoked by the defendants here or the structure placed by them upon the street.

The plaintiffs were divided by the findings of the Special Term into three classes, namely: " (1) Those whose deeds expressly convey to them all the right, title and interest of their grantors in and to Seventy-ninth street adjoining to the middle thereof and said railroad or a part thereof is in the half of the street adjoining; (2) those whose deeds are silent in this respect and said railroad or part thereof is on the adjoining half of the street; (3) those whose properties are located on the half of the street opposite to the half on which said railroad is laid." We must presume that those of the first class owned to the center of the street. (*Matter of City of New York,* 209 N. Y. 344.) The appellants assert, without contradiction by the respondents, that the deeds of the second class in evidence show that they exclude the fee of the street. We must presume that the properties of the third class extended to the center line of the street. We are to determine whether or not the judgments below are right as to each class of owners.

The public highways and streets are acquired and held by the state in trust for the use of all the people. For ordinary and general transportation and traffic they are free and common to all citizens. Thus much is conclusively implied in their acquisition and maintenance, regardless of the estate or title by which they are held. The legislature, as the representative of the state, has control and authority over them, absolute and unrestricted, except as qualified by the Constitution, and the rule that the free use of them for the purposes and

in the modes inherent in their creation will not be unreasonably interfered with through or for any private appropriation or use. It can authorize structures in them for private use and benefit which are reasonably incident to the ordinary uses of a street and which without such authority would be encroachments and public nuisances. (*Wormser* v. *Brown*, 149 N. Y. 163; *Hoey* v. *Gilroy*, 129 N. Y. 132.) It can, in so far as the state or the people at large are concerned or have rights in them, subject them in part or wholly to public use, other than the ordinary street use, as for a steam or commercial railroad (*Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505; *Reining* v. *N. Y., L. & W. R. Co.*, 128 N. Y. 157) or a street railroad. (*People* v. *Kerr*, 27 N. Y. 188; *Peck* v. *Schenectady Ry. Co.*, 170 N. Y. 298.)

It is the established rule of this state that the use of a street for the purposes of a railroad, either steam or street, imposes an added burden upon and is the taking of the property of the owners of the fee of the street. (*Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97; *Mahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658; *Carpenter* v. *Oswego & Syracuse R. R. Co.*, 24 N. Y. 655; *Wager* v. *Troy Union R. R. Co.*, 25 N. Y. 526; *Craig* v. *Rochester City & Brighton R. R. Co.*, 39 N. Y. 404; *Peck* v. *Schenectady Ry. Co.*, 170 N. Y. 298; *Matter of Bloomfield & R. Natural Gas L. Co.* v. *Calkins*, 62 N. Y. 386.) In *Paige* v. *Schenectady Ry. Co.* (178 N. Y. 102, 109); we said the rule was " not to be overruled or avoided, even by indirection."

The rule firmly rests upon the reasons: The construction and operation of a railroad upon a street is not within the contemplated street purposes; it is an occupation of a part of the street with privately owned permanent structures, the operating of cars and the transportation of persons or freight or both thereon for fares; the use of the street for a distinct and exclusive

purpose; the exercise of an exclusive interest in or appropriation of the street; the creation of a private easement in an easement granted or acquired for and vested in the whole public; it is to subject, without compensation, a granted or acquired right of a particular use to a use other than that particular use. The additional use was not within the contemplation of the original owner of the land of the street when the title passed from him and is the taking of property within the meaning of the constitutional provision, which forbids the taking of property without just compensation. Those reasons are applicable alike to steam and street railroads. They are not applicable when the fee of the land of the street is owned by the people and not privately. (*People* v. *Kerr*, 27 N. Y. 188; *Kellinger* v. *Forty-second Street & Grand Street Ferry R. R. Co.*, 50 N. Y. 206.)

It is manifest they are likewise applicable, under the findings of the Special Term, to the tramway constructed and operated by the defendants. That conclusion does not require an expressed and particular demonstration in language. A mere juxtaposition in the mind of the facts and the reasons compels it. It follows that the construction of the tramway upon lands owned by the plaintiffs of class one was unlawful and entitled them to the injunction and the damages consequent upon the wrong, because it was an additional burden on the fee.

The plaintiffs, who did not own, subject to the public easement, the land within the street, and those who did so own the land within the street upon which the tramway was not constructed, are not affected by the reasoning and conclusion already stated. Their rights involved here are identical and are those of mere abutting owners having no ownership of the fee of the street. (*Heiss* v. *Milwaukee & L. W. R. R. Co.*, 69 Wis. 555; *Acker* v. *Mayor & Aldermen of Knoxville*, 117 Tenn. 224; *Trustees* v. *Milwaukee & L. W. R. R. Co.*, 77 Wis. 158;

*Terre Haute & Logansport R. R. Co.* v. *Bissell,* 108 Ind. 113.) In the absence of a statute otherwise enacting (*Kuhl* v. *Chicago & Northwestern R. Co.,* 101 Wis. 42), they were not entitled to any damages resulting from the construction and reasonable and proper operation of the tramway, provided, however, the legislature were empowered to authorize such use of the street. In case the legislative authorization of the use of the street by the tramway exceeded the legislative power, the tramway and its operation were unlawful as to them as well as to the plaintiffs of the first class and the citizens generally. The doctrine that corporations or persons engaged in the performance of work of a public nature authorized by law — as the construction of the subway was — are not liable for consequential damages occasioned by it to others unless caused by misconduct, negligence or unskillfulness (*Atwater* v. *Trustees of Village of Canandaigua,* 124 N. Y. 602), is not applicable. The construction of the tramway was a specific appropriation and taking of private property, incident to but not consequent upon or necessarily arising in the construction of the subway. It was an independent undertaking aidful but not essential to or resulting from the prosecution of the public work. Neither can the tramway be adjudged a legal encroachment or obstruction upon the ground that it was temporary and reasonably necessary and for those reasons a contemplated street use. It is true that the public highways are subject to such incidental temporary or partial obstructions as reasonable necessity requires. Obstructions of such a character are not invasions, but qualifications, of the public right of free and common transit. They must not, however, unreasonably interfere with the rights of the public either through imposition or continuance. (*People* v. *Cunningham,* 1 Denio, 524; *Flynn* v. *Taylor,* 127 N. Y. 596; *Callanan* v. *Gilman,* 107 N. Y. 360; *Bates* v. *Holbrook,* 171 N. Y. 460; *Gari-*

*baldi & Cuneo* v. *O'Connor,* 210 Ill. 284.) Under the facts and the authorities, it is manifest that the tramway was not, as a matter of law, an obstruction of such a character.

We are thus brought to the question whether or not the construction and operation of the tramway was a public use. Whatever may be the power of control, or of regulation of the public highways, possessed by the legislature, it was restricted from authorizing the appropriation of the part of Seventy-ninth street to the construction and operation of the tramway as private property and exclusively for private use. (*City of New York* v. *Rice,* 198 N. Y. 124; *Fanning* v. *Osborne,* 102 N. Y. 441.) To constitute a use public, it must be for the benefit and advantage of all the public and in which all have a right to share — a use which the public have a right to freely enter upon under terms common to all. Public use necessarily implies the right of use by the public. The character of the use, whether public or private, is determined by the extent of the right by the public to its use, and not by the extent to which that right is or may be exercised. If a person or corporation holds or possesses the use, the public must have the right to demand and compel access to or the enjoyment of it. The motive which led to the creation of the use is immaterial. The inducement may lawfully and solely be to benefit a single individual or industry. Whether a particular use is public is for the ultimate decision of the courts. If the use is public, the expediency of or necessity for establishing it is exclusively for the legislature. (*Smith* v. *Smythe,* 197 N. Y. 457, 464; *Pocantico Water Works Co.* v. *Bird,* 130 N. Y. 249; *Matter of Split Rock Cable Road Co.,* 128 N. Y. 408; *Matter of Niagara Falls & Whirlpool R. Co.,* 108 N. Y. 375; *Bloodgood* v. *Mohawk & H. R. R. Co.,* 18 Wend. 9; *Pennsylvania Mutual Life Ins. Co.* v. *Philadelphia,* 242 Penn.

St. 47; *Ulmer* v. *Lime Rock R. R. Co.*, 98 Me. 579.) · The fact that the use may tend to benefit the public as an auxiliary to the completion or enjoyment of a public use in some collateral way does not make it public. (*Matter of Mayor, etc., of New York*, 135 N. Y. 253; *Matter of Eureka Basin Warehouse & Manfg. Co.*, 96 N. Y. 42.)

These general principles applied to the statute and the facts at the bar compel the conclusion that the construction and operation of the tramway was not a public use. The statute itself expressly declares that it does not authorize the construction or operation of any street railroad or railroad tracks and that a tramway existing by virtue of it is to be used only for the removal of materials excavated from the subway or the transportation of materials for use in its construction. It was not intended to be and was not in any sense a common carrier. It was not an integral part of the subway railroad as are the sidings, switches and yards of railroads. The public could not require transportation by it of persons or property or use it in common with the defendants. It was the private property of the defendants or one of them used exclusively for their private advantage and purposes. It is true its use facilitated and progressed the completion of a great public enterprise, but that fact, as we have already said, does not enter into the distinction between a public use and a private use. A lawful work cannot justify an unlawful expedient. As to each of the plaintiffs, the tramway was unlawful in its construction and operation because it subjected the street to an easement exclusively for private use. Because the tramway was unlawfully upon the street, each of the plaintiffs was entitled to recover the damages resulting from the injuries to the easements of light, air, view and access belonging to, and the annoyances, disturbances and discomforts suffered by

him as the owner of an adjoining lot. (*Mahady* v. *Bushwick Railroad Co.*, 91 N. Y. 148.) The amount of damages awarded to each is not before us for review.

The judgment should be affirmed, with costs.

HISCOCK, Ch. J., CUDDEBACK, POUND, CRANE and ANDREWS, JJ., concur; CARDOZO, J., dissents as to the last two classes of property owners mentioned in the opinion.

Judgment affirmed.