GRAND RAPIDS GRAVEL CO. *v.* WILLIAM J. BREEN GRAVEL CO.

HIGHWAYS AND STREETS—EASEMENTS—RIGHT TO CONSTRUCT UNDERPASS—INJUNCTION.

In suit by owner of fee of land in which public has easement for State trunkline highway purposes, to enjoin construction of underpass under said highway by gravel company to connect its property with railroad right of way, with consent of State highway commissioner, in order to facilitate loading of gravel on cars and thus remove menace to traffic from gravel trucks crossing said highway every few minutes, decree of court below dismissing said suit is affirmed, on appeal, by equally divided court (1 Comp. Laws 1929, § 4022).

Appeal from Kent; Perkins (Willis B.), J. Submitted October 25, 1932. (Docket No. 211, Calendar No. 36,580.) Decided April 4, 1933. Rehearing denied May 16, 1933.

Bill by Grand Rapids Gravel Company, a Michigan corporation, against William J. Breen Gravel Company, a Michigan corporation, and another to enjoin construction of an underpass under highway, in which public has easement and the fee is in plaintiff. Bill dismissed. Affirmed, by an equally divided court.

*Norris, McPherson, Harrington & Waer,* for plaintiff.

*Linsey, Shivel & Phelps (John H. Van Der Wal,* of counsel), for defendants.

CLARK, J. The facts are stated with reference to a drawing reproduced herewith. The upper black line marks the southern boundary of the Pere Marquette Railroad Company's right-of-way. The lower two black lines mark the margins of the present State trunkline highway, M–21, assuming it to be 100 feet in width. The triangular piece of land lying between the southern boundary of the railroad and the northern margin of the highway is owned by plaintiff, Grand Rapids Gravel Company. The present center line of M–21 is not exactly the center line of the highway as it was before being paved and improved. The portion, G. H. K., in the apex of plaintiff's triangular piece, was a part of the old highway and it is still highway.

Defendant William J. Breen Gravel Company owns land to the south of the highway. In its business of mining, selling, and shipping gravel, it desired to cross the highway to the railroad right-of-way so that it might there load gravel into cars. It appears that it applied to the State highway department for permission to make an overhead crossing.

The plaintiff was notified of hearing the application. Its president wrote the department objecting to an overhead crossing, and proposing an underground crossing instead. This was followed by an agree-

ment between defendant and the State highway commissioner permitting and providing for the construction of an underpass, 1 Comp. Laws 1929, § 4022. The underpass is from defendants' land to railroad

right-of-way, across the highway and within it, as indicated by the drawing on the map. Within the highway the underpass is underground and under the pavement, and presents no obstruction to use of the full surface of the highway. Plaintiff filed this bill against said defendant and the other defendant, the builder, to restrain construction. The underpass has been completed. The bill was dismissed. Plaintiff has appealed.

That the railroad company is in accord with the attempt to give it this business in the manner proposed is not questioned.

It is unnecessary to review cases showing that necessities of progress and change have subjected highways and streets to many public burdens and uses not contemplated in former times.

We need not consider an argued difference in rights of an adjoining or abutting proprietor where he has the fee and the public the perpetual easement of highway, and where the public has the fee and the proprietor an easement. Generally in the cases a difference is accepted or assumed, but there is respectable authority that the difference is not substantial. *Barney* v. *Keokuk*, 94 U. S. 324; 3 Dillon, Municipal Corporations (5th Ed.), § 1124.

Whether the fee of highway or street be in the adjoining proprietors or in the public, many privileges, sometimes treated as ripening into rights, have been suffered to be exercised by the adjoining proprietors, such as having steps, areaways, cellar ways, bay windows, hitching posts, carriage blocks, etc., in streets, and taking grasses or fruits, and planting trees, etc., in highways. Ordinarily and in practical experience, such sufferance will continue or it will fade or vanish according to the necessities of public use.

In *Opinion of the Justices,* 208 Mass. 603 (94 N. E. 849), a question was certified:

"Is it within the constitutional power of the legislature to enact a law conferring upon a city or town within this Commonwealth the power to grant permits or privileges to private individuals to erect structures which will bridge the public streets connecting premises owned on both sides of the street?"

And answered:

"Yes, if the private individuals own all the land upon or over which the structures are to be erected."

*Yale University* v. *New Haven,* 104 Conn. 610 (134 Atl. 268, 47 A. L. R. 667), is a leading case in which the right to bridge a highway is fully considered, with review of authorities. See, also, *Kellogg* v. *Cincinnati Traction Co.,* 80 Ohio St. 331 (88 N. E. 882, 23 L. R. A. [N. S.] 158, 17 Ann. Cas. 242). And in *People, ex rel. Mather,* v. *Marshall Field & Co.,* 266 Ill. 609 (107 N. E. 864, L. R. A. [N. S.] 1915F, 937, Ann. Cas. 1916B, 743), the defendant was permitted to construct and maintain, for the purpose of connecting its buildings on opposite sides of the street, large tunnels beneath the street.

In the case at bar, both adjoining proprietors on opposite sides of the highway may be said to favor, to consent to, the underpass, and the public, by the State highway commissioner, has consented. On the facts of this case, the matter would end here, but for the circumstance that plaintiff has the fee, subject to the perpetual easement of highway, of the tongue of land projecting into the highway and along the railroad right-of-way, and which tongue is crossed by the underpass, and, on this circumstance, the question is raised of the right to use the

highway, including the part of which plaintiff has the fee, for the underpass.

Defendant, adjoining owner, has right of access to the highway. *Eagle Township Highway Com'rs v. Ely,* 54 Mich. 173; 29 C. J. p. 547. So has the railroad company. While an adjoining owner may not be entitled to access at all points, but only, as against the public, to convenient and reasonable access, 2 Elliott, Roads and Streets (4th Ed.), § 882, no question of such right of access can arise here, for the public, by the State highway commissioner, has consented to access at the points in question.

Defendant, exercising its right of access and in the enjoyment of the railroad company's right of access, might carry its gravel by trucks or other vehicles across the highway and onto the railroad right-of-way. This, the evidence shows, would necessitate crossing the highway by truck every two and one-half minutes and would constitute a serious menace to traffic on this important trunkline highway. The highway is subject to the servitude at and on its surface. The burden upon plaintiff's servient estate would be no greater if the same use were below grade. Constructing the underpass would tend to make the highway safe and convenient and to facilitate travel, and its sanction here is therefore within the public right.

No doubt the highway authorities may construct in the highways barriers, signs, warnings, safety signals and devices, and this within the right of public use. The action of the State highway commissioner in permitting this underpass is sustainable for the same reason, and it is no invasion of plaintiff's servient estate in the highway. It is not for a private purpose. It is the control of adjoining proprietors' rights of access in the highway in the

interest of public safety and convenience, and it therefore is a public use of the highway.

Whether the State highway commissioner may require crossing at other than grade is a question not before the court, for here no more is involved than permission granted on application.

Whether the gravel be taken through the underpass by truck or other vehicle or conveyor is not important.

Affirmed, with costs.

POTTER, SHARPE, and BUTZEL, JJ., concurred with CLARK, J.

WIEST, J. (*for reversal*). I cannot concur in the opinion of Mr. Justice CLARK.

I speak of the Breen Gravel Company as defendant. 1 Compiled Laws 1929, § 4022, gives the State highway commissioner no power to authorize an underpass on one man's property for private use by another. Private interest is never a public requirement. Constructing a tunnel through land constitutes a taking. 1 Elliott, Roads and Streets (4th Ed.), § 228. It is settled law in this State, as stated in plaintiff's brief, that:

"The ownership of the fee of lands used for highway purposes remains in the owner of the property over which the way passes."

The owner of the fee title has a right to use it and to enjoy the profits of it, in any way not incompatible with the public enjoyment of the right of way. *Clark* v. *Dasso,* 34 Mich. 86; *Campau* v. *Konan,* 39 Mich. 362; *Stretch* v. *Village of Cassopolis,* 125 Mich. 167 (51 L. R. A. 345, 84 Am. St. Rep. 567); *Bolender* v. *Southern Michigan Telephone Co.,* 182 Mich. 646; *United States Gypsum Co.* v. *Christenson,* 226 Mich.

347. So well is this right established in this State that the county drain commissioner cannot construct a drain, in whole or in part, along the public highway, without a release of rights by abutting owners, and the statute expressly says that the owners of the land abutting on the side of the highway along which such drain is proposed to be laid shall be considered as still owning the fee of such land. 1 Comp. Laws 1929, § 4139. The underpass is an appropriation of plaintiff's soil and an additional burden thereon, and the owner of the fee is entitled to have the trespass enjoined. The defendant has established a private way under a public way. The public officer exceeded his powers in authorizing defendant to construct a private way within the limits of the highway, and this is no less true because the private way is beneath the public way. In no sense is the underpass for highway use within the scope of the easement vested in the public. It is an additional burden upon the land, imposed by public officials for purely private use by a stranger to the title.

As said in *Bradley* v. *Degnon Contracting Co.*, 224 N. Y. 60 (120 N. E. 89):

"To constitute a use public, it must be for the benefit and advantage of all the public and in which all have a right to share—a use which the public have a right to freely enter upon under terms common to all. Public use necessarily implies the right of use by the public. The character of the use, whether public or private, is determined by the extent of the right by the public to its use, and not by the extent to which that right is or may be exercised. If a person or corporation holds or possesses the use, the public must have the right to demand and compel access to or the enjoyment of it. The motive which led to the creation of the use is immaterial. * * *

"It was the private property of the defendants or one of them used exclusively for their private advantage and purposes. It is true its use facilitated and ·progressed the completion . of a great public enterprise, but that fact, as we have already said, does not enter into the distinction between a public use and a private use. A lawful work cannot justify an unlawful expedient."

The underpass is for exclusive private use, and there existed no more authority for its construction on that portion of plaintiff's soil occupied by the public road than on any other portion thereof. Any incidental benefit to the public travel upon the sur-·face highway cannot sustain violation of plaintiff's legal rights. This passageway dispossesses plaintiff *pro tanto.*

Real property consists of something more than mere surface rights; its meaning and the rights appertaining thereto are found in the ancient maxim: "*Cujus est solum, ejus est useque ad coelum et ad inferos.* The surface of the land is a guide but not the full measure, for, within reasonable limitations, land includes not only the surface but also the space above and the part beneath." *Butler* v. *Frontier Telephone Co.,* 186 N. Y. 486 (79 N. E. 716, 11 L. R. A. [N. S.] 920, 116 Am. St. Rep. 563, 9 Ann. Cas. 858).

It is clearly established in this State that the abutting proprietor holds title in fee to the center of the public highway, subject to the easement for highway purposes. Mr. Justice CLARK, in *United States Gypsum Co.* v. *Christenson, supra.* If the strip of the old road is ever abandoned, full possession will revert to plaintiff. Until abandoned, plaintiff's rights, except for public use and for highway purposes, remain intact and cannot be appropriated by defendant for private use or convenience.

There is no merit in the contention of defendant that the amount of damage for the injury inflicted is too small to confer equity jurisdiction. Unpermitted invasion of premises constitutes a trespass *quare clausum fregit.*

"In trespass *quare clausum fregit,* it is immaterial whether the *quantum* of harm suffered be great, little, or inappreciable." *Whittaker* v. *Stangvick,* 100 Minn. 386 (111 N. W. 295, 10 L. R. A. [N. S.] 921, 117 Am. St. Rep. 703, 10 Ann. Cas. 528).

It is the province of equity jurisdiction to prevent a trespass upon lands.

As stated in 29 C. J. p. 550:

"Subject only to the public easement, an abutting owner has all the usual rights and remedies of the owner of a freehold, including trespass, ejectment, waste, action for damages, injunction, or an action to remove an obstruction, or abate a nuisance."

The highway commissioner assumed the power to grant defendant the right to occupy space, for a private purpose, beneath the surface of plaintiff's land, and when defendant constructed the underpass there was a taking of plaintiff's land without compensation and without warrant of law. Under the law of this State, defendant could not acquire right to the underpass for its private purposes by condemnation. What it could not do by warrant of law, it is not permitted to do under assumption of power exercised by the State highway commissioner. The principle here involved is far-reaching. Cases may be found where an owner with land abutting both sides of the highway has been permitted to establish an underpass, but I have found no case authorizing such a way under circumstances such as in this case. The bill herein was filed during construction of the underpass, but defendant went on and completed the work.

The underpass violates plaintiff's rights of property, and maintenance thereof should be enjoined.

The decree dismissing the bill should be reversed, with costs, and relief granted plaintiff.

McDONALD, C. J., and NORTH and FEAD, JJ., concurred with WIEST, J.