BOONSTRA, J.
Following a bench trial, the trial court entered an order requiring defendant, Ottawa County Road Commission (“defendant” or “OCRC”), to allow plaintiffs, Lee Scholma, as trustee of the Sena Scholma Trust (the Trust), and David Morren (Morren), reasonable access to a 30-acre parcel of undeveloped land (the property) from Horizon Lane for farm operations. The OCRC appeals as of right. We reverse and remand for entry of judgment in favor of defendant.
I. BASIC FACTS AND PROCEDURAL HISTORY
The Trust owns the property, and Morren leases it from the Trust and farms it. The property, which is in Ottawa County, is bordered on the east by 56th Avenue and on the west by Woodcrest Estates, a residential subdivision comprised of single-family homes. Horizon Lane, a “stub street” in the subdivision, ends in a temporary cul-de-sac just west of the property. The traditional point of access to the property is from a driveway off of 56th Avenue just south of the property. However, because the center of the property has the lowest elevation, Morren is unable to access the west side of the property from 56th Avenue during times of high precipitation, especially in early spring. The Trust, at Morren’s request, submitted a permit application to the OCRC for a field driveway to the property from Horizon Lane. After the OCRC denied the permit application, plaintiffs filed their complaint. They requested declaratory relief for violations of the driveways, banners, events, and parades act (the Driveway Act), MCL 247.321 et seq., and the Michigan Right to Farm Act (RTFA), MCL 286.471 et seq[1] Following a *16 bench trial, the trial court held that, in deciding whether to grant or deny the permit application under the Driveway Act, the OCRC was required to consider the RTFA and the agricultural aspects of some of the property, because the Driveway Act and the RTFA “work hand in hand.” The trial court further held that access to the property from Horizon Lane was “necessary ... to engage in farm operations” on the property, and that, under the RTFA, “[a]ny action taken by a local unit of government which impairs a farm or farm operation is improper.” Therefore, the trial court held that the OCRC was required to grant plaintiffs access to the property from Horizon Lane.
II. STANDARD OF REVIEW
On appeal, the OCRC argues that the trial court erred when it failed to limit its review of the OCRC’s denial of the permit application to whether the decision was “totally unreasonable.” Also, the OCRC claims that the trial court interpreted the RTFA much too broadly and that, under a correct interpretation of the RTFA, there is no conflict between the denial of the permit application and the RTFA. Following a bench trial, we review a trial court’s factual findings for clear error and its conclusions of law de novo. Ligon v Detroit, 276 Mich App 120, 124; 739 NW2d 900 (2007). We review de novo issues of statutory interpretation. Ward v Michigan State Univ (On Remand), 287 Mich App 76, 79; 782 NW2d 514 (2010).
III. PLAINTIFFS’ CLAIM UNDER THE DRIVEWAY ACT
Local units of government, including counties, have been granted “reasonable control” of their highways and streets. Const 1963, art 7, § 29. Although a property owner has the right to access his or her property from *17 public highways, State Hwy Comm v Sandberg, 383 Mich 144, 149; 174 NW2d 761 (1970), a property owner is not entitled to access at all points, Grand Rapids Gravel Co v William J Breen Gravel Co, 262 Mich 365, 370; 247 NW 902 (1933). An owner is only entitled to convenient and reasonable access. Id.
The purpose of the Driveway Act is to regulate driveways, banners, events, and parades on highways, to provide for the promulgation of rules, to prescribe requirements for the issuance of permits, and to provide for the issuance of those permits. Title, 1969 PA 200, as amended by 1981 PA 177; Loyer Ed Trust v Wayne Co Rd Comm, 168 Mich App 587, 591; 425 NW2d 189 (1988). The Department of Transportation shall make rules necessary for the administration of the Driveway Act, and “[t]he boards of county road commissioners may adopt by reference the rules, in whole or in part, of the [Department of Transportation] or may adopt its own rules . .. .” MCL 247.325. No driveway is lawful except pursuant to a permit issued in accordance with the Driveway Act unless otherwise provided. MCL 247.322.
In Turner v Washtenaw Co Rd Comm, 437 Mich 35, 37; 467 NW2d 4 (1991), our Supreme Court stated that a road “commission’s exercise of its authority over the public roads may be subject to judicial review where its decision is so unreasonable as to be unsupported by substantial evidence.” This standard of review is “highly deferential” and precludes judicial intervention unless the disputed decision lacked any “reasoned basis or evidentiary support.” Id. The trial court failed to utilize this deferential standard of review.
Here, the traditional access point to the property was from 56th Avenue. An OCRC employee testified that, on the basis of the information he had at trial, *18 he was willing to grant a permit for a field driveway off of 56th Avenue if Scholma were to apply for one. The land along 56th Avenue is predominantly farmland and sparsely populated, whereas the land along Horizon Lane (as well as the two additional subdivision streets that must be traversed to gain access to Horizon Lane) is populated with residential houses. Although 56th Avenue only has a paved road width of 22 feet, there is an eight-foot shoulder on each side and the shoulders were designed to be driven on by vehicles. In contrast, Horizon Lane and the other subdivision streets only have a road width of 26 feet. Although there is an additional two feet on each side for the curb and gutter, curbs and gutters are not typically driven on by vehicles. In addition, cars are often parked on the subdivision streets and this reduces the amount of area available for travel. Much of Morren’s farm equipment exceeds 13 feet in width. The OCRC did not believe that it was convenient for drivers to be hindered by traffic in the opposing lane and it wanted to limit “the potential for any conflicts.” Further, the OCRC has a policy of discouraging the placement of a driveway at the end of a stub street when other access is available because driveways at the end of stub streets have the potential to inhibit future development. Under these circumstances, the OCRC’s denial of the permit application had a sufficiently reasoned basis and evidentiary support. Id. The decision was not a totally unreasonable exercise of power by the OCRC. Accordingly, plaintiffs are not entitled to any relief under the Driveway Act.
In reaching this conclusion, we reject plaintiffs’ argument that, pursuant to MCL 247.324, the OCRC had no discretion to deny the permit application because the *19 application met the OCRC’s written standards. MCL 247.324 provides:
Permits for driveways shall be granted in conformity with rules promulgated by the highway authority which shall be consistent with the public safety and based upon the traffic volumes, drainage requirements and the character of the use of land adjoining the highway and other requirements in the public interest. Rules shall prescribe reasonable standards for the design and the location of driveways and may require that driveways shall be hard-surfaced. The provisions of this section shall not be deemed to deny reasonable access to a nonlimited access highway.
The goal of statutory construction is to ascertain and give effect to the intent of the Legislature. Tevis v Amex Assurance Co, 283 Mich App 76, 81; 770 NW2d 16 (2009). The first criterion in determining legislative intent is the language of the statute. Id. If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning clearly expressed and this Court must enforce the statute as written. Ameritech Publishing, Inc v Dep’t of Treasury, 281 Mich App 132, 136; 761 NW2d 470 (2008). Any interpretation that would render any part of a statute surplusage or nugatory must be avoided. Parise v Detroit Entertainment, LLC, 295 Mich App 25, 27; 811 NW2d 98 (2011). Statutory language must be read within its grammatical context unless a contrary intent is clearly expressed. Greater Bethesda Healing Springs Ministry v Evangel Builders & Constr Managers, LLC, 282 Mich App 410, 414; 766 NW2d 874 (2009). “The ‘last antecedent’ rule of statutory construction provides that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation.” Id.
*20 While MCL 247.324 requires that permits be granted “in conformity with rules promulgated by the highway authority,” the statute also requires that such rules “be consistent with the public safety and based upon the traffic volumes, drainage requirements and the character of the use of land adjoining the highway and other requirements in the public interest.” We conclude that the modifying clause, “which shall be consistent with the public safety and based upon the traffic volumes, drainage requirements and the character of the use of land adjoining the highway and other requirements in the public interest,” means that rules so promulgated by the highway authority must both be consistent with public safety and based upon the other listed items. Consistent with this mandate, the OCRC has adopted a rule regarding driveway location that provides that “[d] rive ways shall be located to maintain the free movement of road traffic and to provide the required site distance and the most favorable driveway grade.” Ottawa County Road Commission, Rules Governing the Granting of Permits for Driveways, Banners & Parades, § III.A.2. This rule is similar to Mich Admin Code, R 247.231(1), which provides that
[a] driveway shall be so located that no undue interference with the free movement of highway traffic will result. A driveway shall be so located also to provide the most favorable vision and grade conditions possible for motorists using the highway and the driveway consistent with development of the site considering proper traffic operations and safety.
The OCRC rule, like the Michigan Administrative Code rule, indicates discretion on the part of the highway authority in granting driveway permits based on the circumstances surrounding each individual request. Moreover, we do not in any event read the language of MCL 247.324 as divesting the OCRC of its constitutionally *21 granted discretion. MCL 247.324 mandates only that, in exercising its discretion, the OCRC do so “in conformity” with applicable rules; it does not mandate that permits be issued whenever a written rule is not violated. Thus, the mere fact that plaintiffs allege that the proposed field driveway does not violate any specific OCRC rule does not relieve the OCRC of any discretion in granting or denying the permit. To the contrary, even if the permit application complied with the OCRC’s rules, the OCRC still had discretion to grant or deny the permit application upon consideration of additional factors.[2]
The trial court expressly recognized the OCRC’s “broad discretion” under the Driveway Act. It nonetheless rejected the OCRC’s exercise of its discretion, basing that finding on its conclusion that the RTFA precluded “[a]ny action taken by a local unit of government which impairs a farm or farm operation ....” It therefore premised its analysis under the Driveway Act on an alleged RTFA violation. As discussed later in this opinion, however, the RTFA is not implicated here. Therefore, the trial court’s rationale fails.
IV PLAINTIFFS’ CLAIM UNDER THE RTFA
The trial court held that “[flailure to grant access to the field when it is necessary for farm operations *22 unreasonably denies Plaintiffs access to their land” in violation of the RTFA. We conclude, however, that the RTFA was not implicated by defendant’s actions.[3]
The RTFA was enacted to protect farmers from nuisance lawsuits. Travis v Preston (On Rehearing), 249 Mich App 338, 342; 643 NW2d 235 (2002).
The Legislature undoubtedly realized that, as residential and commercial development expands outward from our state’s urban centers and into our agricultural communities, farming operations are often threatened by local zoning ordinances and irate neighbors. It, therefore, enacted the Right to Farm Act to protect farmers from the threat of extinction caused by nuisance suits arising out of alleged violations of local zoning ordinances and other local land use regulations as well as from the threat of private nuisance suits. [Northville Twp v Coyne, 170 Mich App 446, 448-449; 429 NW2d 185 (1988).]
In particular, MCL 286.473(1) provides:
A farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation alleged to be a nuisance conforms to generally accepted agricultural and management practices [GAAMPs] according to policy determined by the Michigan commission of agriculture. Generally accepted agricultural and management practices may be reviewed annually by the Michigan commission of agriculture and revised as considered necessary.
Before § 4(6) was added to the RTFA, 1999 PA 261, MCL 286.474(6), effective March 10, 2000, the RTFA *23 did not exempt farms and farm operations from local laws, including local zoning ordinances. Travis, 249 Mich App at 343. MCL 286.474(6), the preemption provision of the RTFA, provides:
Beginning June 1, 2000, except as otherwise provided in this section, it is the express legislative intent that this act preempt any local ordinance, regulation, or resolution that purports to extend or revise in any manner the provisions of this act or generally accepted agricultural and management practices developed under this act. Except as otherwise provided in this section, a local unit of government shall not enact, maintain, or enforce an ordinance, regulation, or resolution that conflicts in any manner with this act or generally accepted agricultural and management practices developed under this act.
The trial court concluded that, pursuant to the RTFA, “[a]ny action taken by a local unit of government which impairs a farm or farm operation is improper.” This conclusion was an overly broad and incorrect statement of the reach of the RTFA. The RTFA preempts any local ordinance, regulation, or resolution that purports to extend or revise in any manner the provisions of the RTFA or the GAAMPs. MCL 286.474(6); see also Lima Twp v Bateson, 302 Mich App 483, 493-494; 838 NW2d 898 (2013). Section 4(6) also states that local units of government shall not enact an ordinance, regulation, or resolution that conflicts in any manner with the RTFA or the GAAMPs. Thus, pursuant to the plain language of the RTFA, only those ordinances, regulations, and resolutions by local units of government that either purport to extend or revise or that conflict with the RTFA or the GAAMPs are improper. An action by a local unit of government that impairs a farm or farm operation is not preempted by the RTFA if it is not an ordinance, regulation, or resolution that purports to extend or revise or that *24 conflicts with the RTFA or the GAAMPs. Accordingly, the trial court failed to engage in the proper inquiry. The proper inquiry is not whether the OCRC’s denial of the permit application impaired Morren’s ability to farm the property, but whether such denial constituted an ordinance, regulation, or resolution that purported to extend or revise or that conflicted with the RTFA or the GAAMPs, under the facts of this case.
Plaintiffs argue that the OCRC’s denial of the permit application conflicted with the GAAMPs for manure management and utilization and for nutrient utilization, both of which include requirements for the timing of “certain applications.” According to plaintiffs, the denial of the permit application conflicts with these two GAAMPs because the denial, which results in Morren having little or no access to the west side of the property during the early spring, requires him to farm in a manner other than that required by the GAAMPs.[4]
Plaintiffs rely on Shelby Charter Twp v Papesh, 267 Mich App 92; 704 NW2d 92 (2005), a case that we find distinguishable. In Papesh, the defendants conducted a poultry operation on 1.074 acres of property. A local zoning ordinance required that all farms have a minimum lot size of three acres. The township sued the defendants, and the trial court held that the defendants’ poultry operation constituted a nuisance per se *25 under the zoning ordinance. In reversing the trial court’s grant of summary disposition in favor of the plaintiff township and remanding for further proceedings, this Court held that material factual questions existed regarding whether the defendants’ farm was commercial in nature and in compliance with the GAAMPs. The Court went further, however, and stated that if the defendants’ poultry operation was commercial in nature and conformed to the GAAMPs, it was a farm operation protected by the RTFA. Id. at 106. Because no GAAMP limited the minimum size of poultry operations, the Court concluded that the RTFA preempted the zoning ordinance because the ordinance precluded a protected farm operation. Id.
Here, however, there is no “ordinance, regulation, or resolution” that conflicts with, or that purported to extend or revise, the GAAMPs. At most, there is a denial of a driveway permit application pursuant to defendant’s constitutionally granted discretionary authority. Moreover, even if that denial constituted an “ordinance, regulation, or resolution” under MCL 286.474(6), it is not the denial itself that may preclude Morren from complying with any timing requirements reflected in the two GAAMPs. To the contrary, it is the wet conditions of the property—if and when they exist—that make it more difficult to meet those timing requirements. If the conditions of the property allow Morren to access the west side of the property from 56th Avenue, then Morren can comply with the GAAMPs. Access via Horizon Lane may make it easier to farm the west side of the property in the early spring, depending on weather and drainage conditions, but the denial of that access point simply does not equate to an “ordinance, regulation, or resolution” that conflicts with, or that purports to extend or revise, the GAAMPs.
*26 Further, the Legislature intended the RTFA to be used as a shield by farmers. It enacted the RTFA to protect farmers from nuisance lawsuits. Travis, 249 Mich App at 342-343; Northville Twp, 170 Mich App at 448-449; Papesh, 267 Mich App at 99. The RTFA provides a defense to farmers in order to protect their farms or farm operations when the farms or operations are claimed to be a nuisance, including for the reasons stated in MCL 286.473. Papesh, 267 Mich App at 99. However, plaintiffs are not using the RTFA as a shield, and no one has claimed the farming operation to be a nuisance. Plaintiffs thus are not using the RTFA for its intended purpose of protecting a farming operation from an action by the OCRC (or anyone else). Rather, plaintiffs are using the RTFA as a sword, seeking to force the OCRC to grant them access to the property from Horizon Lane, because the conditions of the property, especially in early spring, make it difficult, less effective, or perhaps even sometimes impossible, to access the west side of the property from 56th Avenue. However, no provision of the RTFA requires a local unit of government to take affirmative action, and to thereby change the status quo, to allow or enable a farmer to more effectively comply with the GAAMPs.
The present case is similar to Papadelis v City of Troy, 478 Mich 934 (2007). In Papadelis, the Supreme Court held that the RTFA did not exempt the plaintiffs from a zoning ordinance governing the permitting, size, height, bulk, floor area, construction, and location of buildings used for their greenhouse operations because no provisions in the RTFA or the GAAMPs addressed the permitting, size, height, bulk, floor area, construction, and location of buildings used for greenhouse or related agricultural purposes. Similarly here, nothing in the RTFA or the GAAMPs addresses the permitting or location of field driveways. Accordingly, no conflict *27 exists between the OCRC’s denial of the permit application and the RTFA and the GAAMPs. Therefore, the RTFA does not preempt the OCRC’s denial of the permit application and plaintiffs are not entitled to any relief under the RTFA.
Because we conclude that plaintiffs are not entitled to any relief under the Driveway Act or the RTFA, we need not address the OCRC’s remaining arguments on appeal.
Reversed and remanded for entry of judgment in favor of defendant. As the prevailing party, defendant may tax costs. MCR 7.219. We do not retain jurisdiction.
HOEKSTRA, P.J., and RONAYNE KRAUSE J., concurred with BOONSTRA, J.

 Plaintiffs also claimed that the denial of the permit application was a violation of their substantive due process rights. However, the trial court granted summary disposition to the OCRC on this claim, and plaintiffs have not filed a cross-appeal.

 The OCRC employee in charge of granting driveway permits stated that, on the basis of the information he had received at trial, he would grant the Trust a permit for a field driveway off of 56th Avenue. This is consistent with Ottawa County Road Commission, Rules Governing the Granting of Permits for Driveways, Banners & Parades, § III.D.2, which entitles a landowner to one field driveway for “each five hundred (500) feet of frontage or portion thereof.” The property has more than 1,000 feet of road frontage; therefore, it would appear that the Trust is entitled to at least one field driveway. However, there is nothing in the OCRC rules that requires that a field driveway be allowed on the 66 feet of the property that fronts Horizon Lane.

 Even if the RTFA applied here, we would question the trial court’s conclusion that access to the property from Horizon Lane was “necessary” for farm operations. It is undisputed that the property has indeed been farmed for many years without access from Horizon Lane. That portions of the property might be more effectively farmed if access were permitted from Horizon Lane does not mean that such access was “necessary” for farm operations under the RTFA. The trial court recognized that absent such access being “necessary,” the RTFA would not apply and the OCRC could exercise its discretion. We agree.

 Plaintiffs specifically point to the requirement in the Generally Accepted Agricultural and Management Practices for Nutrient Utilization by the Michigan Commission of Agriculture & Rural Development, § III, Nitrogen Management Practices: Time and Placement of Nitrogen Fertilizer, p 9, that “[t]he remainder of the N requirement for these crops [winter small grains, such as winter wheat or rye] should be applied just prior to green-up in the spring.” In discovery, plaintiffs maintained that the OCRC was violating the GAAMPs because, in denying the requested access via Horizon Lane, the OCRC was preventing plaintiffs from “effectively farming” the property.