BELVIDERE TOWNSHIP v HEINZE

Docket No. 215599. Submitted February 1, 2000, at Grand Rapids. Decided May 26, 2000, at 9:20 A.M.

Belvidere Township brought an action in the Montcalm Circuit Court against Gregory L. Heinze, seeking an injunction against the defendant's future operation of a hog farm on land he owned in the township. The township alleged that the hog farm would constitute a nuisance and be in violation of a township zoning ordinance that requires a special use permit for livestock farms that exceed a certain herd size. The defendant asserted the Michigan Right to Farm Act (RTFA), MCL 286.471 *et seq.*; MSA 12.122(1) *et seq.*, as an affirmative defense and filed a counterclaim alleging that before the ordinance took effect, he had established a prior nonconformining use with the steps he undertook in preparing the land for the hog farm operation. The court, Charles H. Miel, J., granted summary disposition for the defendant, ruling that the defendant had established a prior nonconforming use. The township appealed.

The Court of Appeals *held*:

1. A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the effective date of the zoning regulation. To establish a prior nonconforming use, a property owner must engage in work of a substantial character toward the actual use of the land for the nonconformining purpose. Such work must go beyond mere preparation and must materially and objectively change the land itself. In this case, the defendant failed to establish a prior nonconforming use inasmuch as his efforts in purchasing the land, acquiring financing, hiring a designer for the farm and manure pits, obtaining estimates for the costs of buildings and materials and entering into contracts with suppliers, purchasing insurance, grading the site, staking the location of the barns and manure pits, applying for well and sediment control permits, constructing the manure pits and sewage system, and building an access road and installing a culvert did not substantially change the land.

2. The matter must be remanded for reconsideration of the question whether the zoning ordinance is preempted by the RTFA, as

amended by 1999 PA 261. Subsection 4(6) of the RTFA, MCL 286.474(6); MSA 12.122(4)(6), provides that the RTFA preempts any local ordinance, regulation, or resolution that purports to extend or revise in any manner the provisions of the RTFA or generally accepted agricultural and management practices developed under the RTFA.

Reversed and remanded.

ZONING — PRIOR NONCONFORMING USE.

A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the effective date of the zoning regulation; to establish a prior nonconforming use, a property owner must engage in work of a substantial character toward the actual use of the land for the nonconforming purpose.

*Varnum, Riddering, Schmidt & Howlett, LLP* (by *Teresa S. Decker* and *Mark E. Nettleton*) and *Richard D. Palmer*, for the plaintiff.

*Moore & Simon* (by *Dennis L. Moore*) and *Warner Norcross & Judd LLP* (by *Devin S. Schindler*), for the defendant.

Before: FITZGERALD, P.J., and SAAD and WHITBECK, JJ.

PER CURIAM. Plaintiff appeals as of right the order granting defendant's motion for summary disposition in this action in which plaintiff alleged a nuisance arising from, and seeking an injunction against, defendant's use of his property in Belvidere Township as a hog facility without receiving a special use permit. The trial court granted summary disposition pursuant to MCR 2.116(C)(10) on the ground that there was no genuine issue of material fact that defendant had a prior nonconforming use. We reverse and remand.

FACTS

In the summer of 1997, defendant purchased thirty-five acres on Holland Road in Belvidere Township for the purpose of hog farming. Defendant intended to raise between 6,000 and 7,000 hogs at the site. At the time of the purchase of the land, the township's zoning ordinance did not restrict large livestock operations.

On April 23, 1998, the township passed a new zoning ordinance that became effective on May 7, 1998. The new ordinance provided that any farm livestock in excess of two hundred animal units, for more than forty-five days, constitutes a "concentrated livestock operation"[1] for which a special use permit is required. Before the effective date of the ordinance, Jerald Brown, the township zoning administrator, visited the Holland Road site and invited defendant to attend an April 28, 1998, zoning board meeting to seek a special use permit to operate a concentrated livestock operation. Instead, defendant continued to work on the Holland Road site. On May 4, 1998, the township attorney mailed defendant a letter directing him to cease and desist from further work without a permit. After defendant refused, the township filed an action alleging a nuisance arising from, and seeking an injunction against, defendant's use of the property as a concentrated livestock operation because defendant failed to receive either a building permit or a special use permit to operate a concentrated livestock operation.

---

[1] According to the township's zoning administrator, a pig is 0.40 animal units and, therefore, any operation with more than 480 pigs is considered a concentrated livestock operation.

The trial court entered a preliminary injunction barring defendant from doing any further excavation or construction at the site until further order of the court. As affirmative defenses, defendant claimed that the ordinance violated the Michigan Right to Farm Act (RTFA), MCL 286.471 *et seq.*; MSA 12.122(1) *et seq.* Defendant also filed a counterclaim, alleging that he had a prior nonconforming use for the operation of a hog farm. Following a hearing on the township's motion for summary disposition, the trial court concluded that there was no genuine issue of material fact that the aggregate of defendant's activities on the property established a prior nonconforming use at the time the ordinance was enacted. Thus, the trial court granted summary disposition in favor of defendant.[2]

## I. STANDARD OF REVIEW

On appeal, the township argues that the trial court erred in ruling that defendant established a prior nonconforming use. A motion for summary disposition under MCR 2.116(C)(10) is subject to review de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A trial court may grant a motion for summary disposition if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of

---

[2] The trial court also ruled that questions of fact precluded summary disposition of defendant's claims of exclusionary zoning, laches, or unclean hands. The court further concluded that the zoning ordinance was not preempted by the RTFA and that the RTFA did not exempt defendant from complying with the zoning ordinance.

law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999).

## II. PRIOR NONCONFORMING USE

A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date. *Heath Twp v Sall*, 442 Mich 434, 439; 502 NW2d 627 (1993). To establish a prior nonconforming use, a property owner must engage in work of a substantial character done by way of preparation for an actual use of the premises. *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 574; 398 NW2d 393 (1986). The work of substantial character must be toward the actual use of the land for the nonconforming purpose. *Id.* at 576. The actual use that is nonconforming must be apparent and manifested by a tangible change in the land, as opposed to intended or contemplated change by the property owner. *Heath Twp, supra* at 440. Thus, to constitute a legally cognizable nonconforming use, work of a substantial nature beyond mere preparation must materially and objectively change the land itself. *Id.* at 441.

Defendant argues that he established a vested nonconforming use before May 7, 1998, by (1) purchasing the land, (2) acquiring financing, (3) hiring a designer for the farm and manure pits, (4) obtaining quotes for the costs of buildings and materials and entering into contracts with suppliers, (5) purchasing insurance, (6) grading the site, (7) staking the location of the barns and manure pits, (8) applying for well and sediment control permits, (9) constructing the manure

pits and sewage system, and (10) building an access road and installing a culvert. An examination of each activity is necessary.

First, the purchase of the property with the intention to use it for a particular purpose does not give rise to a vested nonconforming use. *Heath Twp, supra* at 436, n 1.

Second, acquiring financing, hiring a designer, obtaining quotes, and purchasing insurance are classic examples of an insufficient preparatory operation. See, e.g., *Gackler, supra.*

Third, under the facts of this case, excavating the site and staking the location of the barn and manure pits are also preliminary ventures that do not constitute work of a substantial character. *Id.*

Fourth, although a building permit along with construction work may give rise to a vested right to construct the approved structure, *Bevan v Brandon Twp*, 438 Mich 385, 402; 475 NW2d 37 (1991), defendant never sought a building permit. Instead, defendant received well and soil permits. Unlike a building permit that would specifically approve the construction of a particular structure, well and soil permits do not approve a particular use for land. Therefore, the reasoning that supports a finding that a landowner's building permit may give rise to a vested interest would not apply to water and soil permits.

Fifth, construction of a manure pit and a sewer system feasibly could constitute work of a substantial character that tangibly changed the land. See *Heath Twp, supra* at 444. However, these activities fail to establish a vested nonconforming use because they are minuscule in comparison with the entire construction of a swine farm with thousands of pigs. Further,

the improvements are equally useful for a lawful, conforming use, such as the operation of a hog farm that does not qualify as a concentrated livestock operation.

Sixth, although defendant testified that he had constructed an access road to the site, the nature of the road was never described. Here, we have no information regarding the makeup or route of the road, but even if paved a road would not make a nonconforming use apparent, because a road would be equally useful for any lawful use.

This examination of defendant's activities indicates that only the manure pit and sewer system are pertinent. Neither of these activities, in light of the total construction of a hog farm that would involve thousands of pigs, is sufficient to satisfy defendant's burden. The activities were merely preliminary in nature and did not change the substantial character of the land. Equally, the work was consistent with a lawful hog operation.[3] Additionally, defendant's activities, in the aggregate, are not substantial. In *Gackler, supra,* the Court held that the plaintiff failed to establish a prior nonconforming use for a mobile home park despite a fully constructed road, erected monuments, graded and excavated plats, and installation of eleven mobile homes. Clearly, the construction undertaken in *Gackler* was more substantial than that in the present case. Accordingly, we find that defendant failed to establish a legally cognizable preexisting nonconforming use.

---

[3] Additionally, defendant's arguments that he relied on Brown's 1996 statements regarding the need for a permit is undermined by this Court's decision in *Warholak v Northfield Twp Supervisor,* 57 Mich App 360, 361-362; 225 NW2d 767 (1975).

### III. THE MICHIGAN RIGHT TO FARM ACT

The RTFA is designed to protect farmers from nuisance lawsuits. Under the act, a farming operation cannot be found to be a nuisance if it meets certain criteria, such as conforming to "generally accepted agricultural management practices." MCL 286.473(1), (2); MSA 12.122(3)(1), (2).[4] At the time this case was decided, the RTFA did not exempt farming operations from applicable federal, state, and local laws, including local zoning ordinances, see MCL 286.474; MSA 12.122(4), so farming operations could be found to be in violation of local zoning laws even while being otherwise protected from nuisance lawsuits. Because this cause of action was filed to enforce a zoning ordinance, the RTFA was not a defense to this action. See, e.g., *Troy v Papadelis (On Remand)*, 226 Mich App 90, 96; 572 NW2d 246 (1997).

However, § 4 of the RTFA was amended by 1999 PA 261, effective December 28, 1999. Subsection 4(6) now provides:

> Beginning June 1, 2000, except as otherwise provided in this section, it is the express legislative intent that this act

---

[4] MCL 286.473(1), (2); MSA 12.122(3)(1), (2) provides:

(1) A farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation alleged to be a nuisance conforms to generally accepted agricultural and management practices according to policy determined by the Michigan commission of agriculture. . . .

(2) A farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation existed before a change in the land use or occupancy of land within 1 mile of the boundaries of the farm land, and if before that change in land use or occupancy of land, the farm or farm operation would not have been a nuisance.

preempt any local ordinance, regulation, or resolution that purports to extend or revise in any manner the provisions of this act or generally accepted agricultural and management practices developed under this act. Except as otherwise provided in this section, a local unit of government shall not enact, maintain, or enforce an ordinance, regulation, or resolution that conflicts in any manner with this act or generally accepted agricultural and management practices developed under this act. [MCL 286.474(6); MSA 12.122(4)(6).]

Hence, effective June 1, 2000, a local unit of government shall not enact, maintain, or enforce an ordinance, regulation, or resolution that conflicts in any manner with the RTFA or generally accepted agricultural and management practices developed under the RTFA. Defendant contends that the RTFA, as amended, "preempts the Township from zoning out of existence farms that operate in compliance with generally accepted agricultural and management practices" and renders this dispute moot. Because the trial court did not have the benefit of the amended act in rendering its decision, we remand this matter to the trial court for reconsideration in light of the amended RTFA.

Reversed and remanded. Jurisdiction is not retained.