SHELBY CHARTER TOWNSHIP v PAPESH

Docket No. 259965. Submitted March 29, 2005, at Detroit. Decided June 23, 2005, at 9:05 a.m.

Shelby Charter Township brought an action in the Macomb Circuit Court against Vikki Papesh and Martin Papesh, Jr., seeking a determination that the defendants' raising of poultry in an area zoned for residential use ran afoul of the township zoning ordinances and was a nuisance per se and also seeking an order of injunctive relief to stop the defendants' raising of farm animals on their property. The township zoning ordinance requires farming to be done on a minimum of three acres, but the defendants' property is slightly over one acre in size. The plaintiff moved for summary disposition. The defendants filed a counter-motion for summary disposition, alleging that the Right to Farm Act (RTFA), 286.471 *et seq.*, preempts the enforcement of the plaintiff's zoning ordinance. The court, Richard L. Caretti, J., granted summary disposition for the plaintiff, ruling that the raising of the poultry was a nuisance per se in violation of the zoning regulations and that the poultry operation did not rise to a commercial operation that is subject to protection under the RTFA, and granted a permanent injunction preventing the defendants from raising poultry and producing poultry products on their property. The defendants appealed.

The Court of Appeals *held*:

1. Summary disposition for the plaintiff was improperly granted with regard to the issue whether the poultry operation of the defendants was protected from the zoning ordinance by the RTFA. If the defendants' farming activities are to be protected by the RTFA, those activities must be engaged in for commercial purposes and must be in compliance with the generally accepted agricultural and management practices (GAAMPs) promulgated under the RTFA. It cannot be determined from a review of the limited record from the lower court whether, as a matter of law, the defendants' poultry operations were commercial in nature or in compliance with the applicable GAAMPs. The evidence produced in the lower court is capable of supporting different conclusions on these issues and creates a question of fact whether the defendants' poultry operation qualified for RTFA status, which would preempt

the zoning ordinance. The trial court did not, however, err in denying summary disposition for the defendants.

2. State law preempts a municipal ordinance where the ordinance directly conflicts with the state statute or the statute completely occupies the field that the ordinance attempts to regulate. The RTFA is unambiguous in stating that a local ordinance is preempted when it purports to extend or revise the RTFA or the GAAMPs. If the farm operation is commercial in nature and in compliance with the GAAMPs, it is a farm operation protected by the RTFA. The ordinance requiring a minimum of three acres for any farming operation is in conflict with the RTFA.

3. The defendants argued that the plaintiff's attempt to enjoin them from continuing the poultry operation is barred by laches. The lower court did not articulate any findings of fact to support the conclusion that the plaintiff's claim was not barred by laches. The doctrine of laches requires the passage of time and a change in conditions that would make inequitable the enforcement of a claim against a defendant, that is, the lack of due diligence by the plaintiff prejudiced the defendant. The lower court, on remand, may find it necessary to address the issue of laches to properly resolve this case.

Affirmed in part, reversed in part, and remanded for further proceedings.

ZONING — ZONING ORDINANCES — RESIDENTIAL ZONING — FARMING OPERATIONS — RIGHT TO FARM ACT.

The Right to Farm Act preempts a township ordinance for residential zoning with respect to a farming operation where the farming operation is commercial in nature and in compliance with the generally accepted agricultural and management practices promulgated under the act (MCL 186.471 *et seq.*).

*Kirk & Huth, P.C.* (by *Robert S. Huth, Jr.*, and *Raechel M. Mangeno*), for the plaintiff.

*Haywood Harrison, P.C.* (by *David J. Haywood* and *Geoffrey D. Harrison*), for the defendants.

Before: KELLY, P.J., and SAWYER and WILDER, JJ.

KELLY, P.J. Defendants Vikki Papesh and Martin Papesh, Jr., appeal as of right the trial court's order

granting summary disposition in favor of plaintiff Shelby Township and denying defendants' counter-motion for summary disposition. The trial court determined that the "active poultry coop"[1] on defendants' property constitutes a nuisance per se in violation of plaintiff's zoning regulations, and permanently enjoined defendants "from keeping, raising, harvesting and/or otherwise producing poultry or poultry products" on their property. This appeal presents the question whether defendants' poultry operations constitute a "farm" as defined in the Right to Farm Act, (RTFA), MCL 286.471 *et seq.*, and, if it does, whether the RTFA preempts enforcement of plaintiff's zoning ordinance. We hold that while the RTFA does preempt the enforcement of zoning ordinances that conflict with the RTFA, genuine issues of material fact preclude summary disposition in this case. Accordingly, we affirm the trial court's denial of defendants' counter-motion for summary disposition, reverse the trial court's order granting summary disposition to plaintiff, and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In 1995, defendants purchased 1.074 acres of property in Shelby Township. A farmhouse and two chicken coops were located on the property. The area surrounding the property was largely undeveloped. At the time of defendants' purchase, farming was a permitted land use, but Shelby Township Zoning Ordinance § 9.10 restricted the size of farms as follows:

> For the purpose of this section, the term "farm" shall mean the raising of vegetables or the keeping of small farm

---

[1] It is undisputed that there were two poultry coops on defendants' property.

animals, including poultry, for any purpose, and shall have a minimum lot size of three acres.

In 1996, defendants purchased, and began raising, a flock of chickens using the preexisting chicken coops on their property. By 1998, the surrounding area began to be developed and large homes were built near and adjoining defendants' property. Neighbors began to complain to plaintiff about defendants' poultry operation. In 2002, plaintiff apparently sent a letter regarding a complaint about the chickens to defendants.[2] In a written response, Vikki Papesh stated in relevant part:

> We are maintaining the traditional and acceptable use of the existing poultry barns to accommodate our meat and egg chickens. Each spring I purchase approximately 50 day old chickens and raise them until they begin to lay in the early fall, and then cull the older hens to maintain production. A few turkeys are raised to provide meat. The meat is a significant and important part of our diet, and the eggs are much coveted by us and by many of our family members, friends and neighbors . . . .

> \* \* \*

> We rely on our poultry, our dwarf orchard, our garden, and our hunting harvests to sustain us throughout the year and are teaching our children traditional skills and traditional values.

Tension between defendants and their neighbors regarding defendants' poultry operations continued to mount. On June 28, 2004, several of the neighbors filed a petition with plaintiff requesting that it

> investigate the active and on-going maintenance of a chicken/turkey coop in the northeast corner of the property, owned and operated by [defendants]. In addition to

---

[2] Although the parties repeatedly refer to this complaint, it is not contained in the lower court record.

the nuisance factor created by the persuasive odor, the unsightly appearance and the continuing noise, there is an overriding safety concern caused by both standing water and drainage.

On July 28, 2004, plaintiff filed its complaint mirroring the complaints contained in the neighbors' petition and alleged that the coops constituted "a negligent public nuisance, a public nuisance in fact and a nuisance per se under M.C.L. 125.224."[3] It also alleged that the chicken/turkey coops were not in compliance with the generally accepted agricultural and management practices (GAAMPs) of the RTFA. Plaintiff also sought injunctive relief.

Plaintiff moved for summary disposition under MCR 2.116(C)(8) and (10), asserting that defendants' poultry operation was in violation of the ordinance. In response, defendants argued that plaintiff's claims were barred by the RTFA and that plaintiff failed to exhaust its administrative remedies because it did not file a complaint with the Michigan Department of Agriculture (MDA). Defendants further asserted that plaintiff's complaint was barred by laches and failed to state a claim. Accordingly, defendants sought summary disposition in their favor under MCR 2.116(C)(4), (8), or (10). In support of their motion, defendants submitted affidavits asserting that they had sold and were continuing to sell eggs and surplus fruits and vegetables. They also submitted a letter from the MDA stating in relevant part:

> The Michigan Department of Agriculture (MDA) received a copy of your updated Manure Management System

---

[3] At oral argument, plaintiff conceded that its nuisance argument was limited to a "nuisance per se" theory. Use of land in violation of an ordinance is a nuisance per se. MCL 125.587; *High v Cascade Hills Country Club*, 173 Mich App 622, 629; 434 NW2d 199 (1988).

> Plan, soil test results, and manure test results. The information was received at the request of MDA based on the review of your agriculture management practices and to determine conformance with the Generally Accepted Agricultural and Management Practices for Manure Management and Utilization (Practices).
>
> Upon review of the information, MDA has determined that your poultry facility conforms to the Practices developed under the Right to Farm Act (PA 93 of 1981, as amended).

Plaintiff answered defendants' motion for summary disposition, arguing that the RTFA was not applicable to defendants' farm because it was neither commercial nor in compliance with the site selection GAAMPs. It argued that defendants' affidavits should be disregarded because they conflicted with Vicky Papesh's prior statement.

In granting summary disposition in plaintiff's favor, the trial court first determined that the poultry operation was a nuisance per se under the township ordinance prohibiting the raising of farm animals on property that was less than three acres in size. It further determined that the RTFA was inapplicable because the sales generated by defendants' poultry operations did not "rise to the level required for the Right to Farm Act to even apply until at the earliest the year 2000 and perhaps the year 2003." The trial court also denied defendants' counter-motion for summary disposition.

## II. STANDARDS OF REVIEW

The trial court did not directly state the subsection of MCR 2.116(C) under which it granted summary disposition to plaintiff. However, because the court looked beyond the pleadings in deciding the motion, this Court

reviews the motion as having been granted pursuant to MCR 2.116(C)(10). *Kefgen v Davidson,* 241 Mich App 611, 616; 617 NW2d 351 (2000). We review de novo a trial court's ruling on a motion for summary disposition under MCR 2.116(C)(10). *Rose v Nat'l Auction Group,* 466 Mich 453, 461; 646 NW2d 455 (2002). We consider the pleadings and documentary evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id.* Summary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Whether a state statute preempts a local ordinance is a question of statutory interpretation—a question of law that this Court reviews de novo. *Michigan Coalition for Responsible Gun Owners v City of Ferndale,* 256 Mich App 401, 405; 662 NW2d 864 (2003). As our Supreme Court has stated:

> When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. Because the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute. [*Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002) (citations omitted).]

### III. ANALYSIS

Defendants first argue that the trial court erred in denying their motion for summary disposition because their operations were protected by the RTFA. Alternatively, they argue that the trial court erred by granting summary disposition to plaintiff under MCR 2.116(C)(10) because there was at least a genuine

issue of material fact about whether their poultry operation was protected by the RTFA. We find that, on the basis of this record, genuine issues of material fact exist that preclude summary disposition for either party.

### A. THE RIGHT TO FARM ACT

This Court has previously determined that "[t]he RTFA was implemented to protect farmers from nuisance lawsuits." *Travis v Preston (On Rehearing)*, 249 Mich App 338, 342; 643 NW2d 235 (2002). This Court has also noted:

> The Legislature undoubtedly realized that, as residential and commercial development expands outward from our state's urban centers and into our agricultural communities, farming operations are often threatened by local zoning ordinances and irate neighbors. It, therefore, enacted the Right to Farm Act to protect farmers from the threat of extinction caused by nuisance suits arising out of alleged violations of local zoning ordinances and other local land use regulations as well as from the threat of private nuisance suits. [*Northville Twp v Coyne,* 170 Mich App 446, 448-449; 429 NW2d 185 (1988).]

In particular, the RTFA, provides:

> (1) A farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation alleged to be a nuisance conforms to generally accepted agricultural and management practices according to policy determined by the Michigan commission of agriculture. Generally accepted agricultural and management practices shall be reviewed annually by the Michigan commission of agriculture and revised as considered necessary. [MCL 286.473.]

Thus, "[u]nder the RTFA, a farm or farming operation cannot be found to be a nuisance if it meets certain criteria, such as conforming to 'generally accepted

agricultural management practices.' " *Travis, supra* at 342-343 (citations omitted).

The RTFA defines "farm," "farm operation," and "farm product" in MCL 286.472:

> (a) "Farm" means the land, plants, animals, buildings, structure, including ponds used for agricultural and aquacultural activities, machinery, equipment, and other appurtenances used in the commercial production of farm products.
>
> (b) "Farm operation" means the operation and management of a farm or a condition or activity that occurs at any time as necessary on a farm in connection with the commercial production, harvesting, and storage of farm products . . . .
>
> (c) "Farm product" means those plants and animals useful to human beings produced by agriculture and includes, but is not limited to, forages and sod crops, grains and feed crops, field crops, dairy and dairy products, poultry and poultry products . . . or any other product which incorporates the use of food, feed, fiber, or fur, as determined by the Michigan commission of agriculture.

Both the definitions for "farm" and "farm operation" employ the terms "farm product" and "commercial production." However, while the RTFA defines the term "farm product," it does not define "commercial production." Thus, to discern the meaning of these provisions, we must first determine what is meant by the phrase "commercial production." Words that are not defined by a statute will be given their plain and ordinary meanings, and a court may consult dictionary definitions when ascertaining those meanings. *Koontz, supra* at 312. "Commercial" is defined as "produced, marketed, etc., with emphasis on salability, profit, or the like," and "production" is defined as "the act of producing; creation or manufacture." *Random House Webster's College Dictionary* (1992). Thus, "commercial production"

is the act of producing or manufacturing an item intended to be marketed and sold at a profit.[4]

According to the plain language of the RTFA, a farm or farming operation cannot be found to be a nuisance if it is commercial in nature and conforms to the GAAMPs. MCL 286.472(b); 286.473(1); *Belvidere Twp v Heinze*, 241 Mich App 324, 331; 615 NW2d 250 (2000). The RTFA describes GAAMPs as "those practices as defined by the Michigan commission of agriculture." MCL 286.472(d). Whether a farm conforms to the GAAMPs is decided according to policies adopted by the Michigan Commission of Agriculture. *Richmond Twp v Erbes*, 195 Mich App 210, 221; 489 NW2d 504 (1992); MCL 286.473(1).

Applying the RTFA to defendants' poultry operations, it is clear that the poultry raised on defendants' property are "farm products" because they are useful to human beings and produced by agriculture. The raising of poultry on defendants' property constitutes a "farm operation" because it involves the "harvesting of farm products." However, if defendants' farm is to be protected by the RTFA, it must be also be engaged in breeding, raising, and selling poultry for commercial purposes as well as be in compliance with the appropriate GAAMPs as determined by the commission. Upon review of the limited record in the lower court, we cannot find, as a matter of law, that defendants' poultry operations were either commercial in nature or in compliance with the applicable GAAMPs.

In support of its motion for summary disposition, plaintiff pointed to the 2002 letter signed by Vikki

---

[4] Contrary to the trial court's determination that the sales generated by defendants' poultry operation did not "rise to the level required for the right to farm act to even apply," there is no minimum level of sales that must be reached before the RTFA is applicable.

Papesh and sent to plaintiff. In particular, Vikki Papesh indicated in the letter that a few turkeys were being raised on the property to provide meat that "is a significant and important part of our diet" and that eggs laid by the chickens on the property "are much coveted by us and by many of our family members, friends and neighbors . . . ." She further wrote, "We rely on our poultry, our dwarf orchard, our garden, and our hunting harvests to sustain us throughout the year and are teaching our children traditional skills and traditional values." Plaintiff submits that the clear inference from these statements, coupled with the lack of any direct reference to commercial activity such as selling meat or eggs from the poultry for profit, is that defendants were not engaged in a commercial enterprise; rather, they were merely raising poultry to be consumed by their own family. Plaintiff contends that these statements, viewed in a light most favorable to plaintiff, could reasonably support a finding that the poultry operation was not in any part a commercial enterprise and thus was not a "farm" or "farm operation" within the meaning of MCL 286.473(1).

To the contrary, we conclude that defendants submitted evidence that could support a finding that the poultry operation was at least partially commercial in nature. In particular, defendants asserted in separate affidavits that they were "currently selling an average of forty[-]two dozen eggs per week and the expected annual gross income for the fiscal year from September 2004-August 2005 is approximately $3,500." Plainly, if credited as true by a fact-finder, such testimony from defendants would support the opposite conclusion, i.e., that the poultry operation was at least in part a commercial operation that could potentially be protected under the RTFA.

Plaintiff argues that the statements in defendants' affidavits indicating there was a commercial aspect to the poultry operation should be disregarded because they attempt to create a genuine issue of material fact by contradicting Vikki Papesh's statements in the 2002 letter. However, the cases plaintiff cites in support of its assertion that the statements in the affidavits should be disregarded are distinguishable from this case because each of those cases involved disregarding an affidavit to the extent that it attempted to contradict answers given by a party or other witness during deposition testimony.[5] Obviously, Vikki Papesh's statements in the letter are not sworn testimony. We decline to extend the general rule against contradicting deposition testimony with an affidavit in the summary disposition context to prevent a party from contradicting statements that were not made under oath or as part of legal proceedings.

Moreover, the statements in the affidavits regarding a commercial aspect to the poultry operation do not directly contradict the statements in the letter. Further, the letter was sent in 2002, but plaintiff did not file its complaint until 2004. It is possible that, even if the poultry operation on defendants' property had no commercial aspect in 2002, defendants expanded it to involve a commercial operation by the time of their affidavits in 2004. Because the evidence produced in the trial court is capable of supporting different conclusions and creates a question of fact about whether defendants' poultry operation was commercial, the trial court erred in granting summary disposition to plaintiff.[6]

---

[5] In support of its argument, plaintiff cites *Kaufman & Payton, PC v Nikkila*, 200 Mich App 250, 254-257; 503 NW2d 728 (1993); *Griffith v Brant*, 177 Mich App 583, 587-588; 442 NW2d 652 (1989); *Peterfish v Frantz*, 168 Mich App 43, 54-55; 424 NW2d 25 (1988).

[6] Plaintiff further asserts that the trial court considered testimony by Vikki Papesh at the motion hearing and considered her credibility in

Additionally, there is a genuine issue of fact concerning whether defendants' poultry operations complied with the applicable GAAMPs. Plaintiff submits that it was entitled to summary disposition on this ground because the poultry operation violated the site selection GAAMPs for livestock production facilities. But it is unclear from this record whether the site selection GAAMPs even apply to defendants. Site selection GAAMPs were promulgated in 2000 and only apply to new and expanding farms. If defendants were operating a farm in a manner protected by the RTFA before 2000, the site selection GAAMPs would not be applicable. Additionally, they define livestock production facilities as "all facilities where farm animals . . . are confined with a capacity of 50 animal units or greater and/or the associated manure storage facilities." It appears to be undisputed that the number of animals kept as part of defendants' poultry operation was less than fifty animal units.[7]

We also reject defendants' argument that they have established as a matter of law that their operation complies with all applicable GAAMPs. In support of this assertion, defendants rely on the MDA's letter, in particular, its statement that the "MDA has determined that your poultry facility conforms to the Practices developed under the [RTFA]." However, read in context, this statement follows an introduction explaining that it was based on a review of whether the operation

determining whether to grant summary disposition. Plaintiff suggests that we consider this a factual finding and review it for clear error. We reject this argument as a matter of law because a trial court may not make factual findings in deciding a summary disposition motion. *Jackhill Oil Co v Powell Production, Inc*, 210 Mich App 114, 117; 532 NW2d 866 (1995).

[7] According to the GAAMPs, fifty animal units would be 5,000 laying hens or broilers or 2,750 turkeys.

complied with the GAAMPs for manure management and utilization. Thus, we conclude that the MDA indicated with this statement that the poultry operation complied with that particular GAAMP, not as a certification of compliance with all applicable GAAMPs.

In sum, the trial court erred in granting summary disposition in plaintiff's favor because it did not establish that it was entitled to judgment as a matter of law. However, the trial court did not err in denying summary disposition to defendants. On the basis of this record, we conclude that factual issues remain regarding whether the poultry operation is at least in part commercial in nature and whether it is in compliance with the GAAMPs. Accordingly, we remand for further proceedings. To conserve judicial resources, we next address the other issues raised in this appeal that will affect the proceedings on remand.

### B. PREEMPTION

Defendants argue that, if their poultry operation is commercial in nature and in compliance with the relevant GAAMPs, the RTFA preempts plaintiff's ordinance. Plaintiff argues to the contrary that, irrespective of the farm's commercial nature or compliance with the GAAMPs, the RTFA is inapplicable because, at the time defendants initiated their poultry operation, farming was prohibited on property of less than three acres.

State law preempts a municipal ordinance where the ordinance directly conflicts with a state statute or the statute completely occupies the field that the ordinance attempts to regulate. *Rental Prop Owners Ass'n of Kent Co v Grand Rapids,* 455 Mich 246, 257; 566 NW2d 514 (1997). A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance

prohibits what the statute permits. *People v Llewellyn*, 401 Mich 314, 322 n 4; 257 NW2d 902 (1977).

The RTFA, specifically MCL 286.474(6), provides:

> Beginning June 1, 2000, except as otherwise provided in this section, *it is the express legislative intent that this act preempt any local ordinance,* regulation, or resolution that purports to extend or revise in any manner the provisions of this act or generally accepted agricultural and management practices developed under this act. Except as otherwise provided in this section, *a local unit of government shall not* enact, maintain, or *enforce an ordinance,* regulation, or resolution *that conflicts in any manner with this act* or generally accepted agricultural and management practices developed under this act. [Emphasis added.]

The language of the statute is unambiguous. It clearly states that a local ordinance is preempted when it purports to extend or revise the RTFA or the GAAMPs. It further plainly states that a local unit of government shall not enforce an ordinance that conflicts in any manner with the RTFA or the GAAMPs. It is undisputed that plaintiff's Ordinance § 9.10(A), which was in force when defendants bought the property in 1995, prohibited raising poultry on a parcel smaller than three acres. It is also undisputed that the property did not exceed 1.074 acres. The relevant GAAMPs provide for the proper management practices for poultry farming, including, but not limited, to facilities, manure management, and care of chickens and turkeys. Plaintiff has not produced, and we are unable to find, any GAAMP that limits poultry farming to property consisting of more than three acres. As we concluded above, if defendants' farm is commercial in nature and in compliance with the GAAMPs, it is a farm operation protected by the RTFA. The ordinance conflicts with the RTFA to the extent that it allows plaintiff to preclude a protected farm operation by limiting the size of a farm.

Further, as we previously noted, MCL 286.474(6) expressly provides that "a local unit of government *shall not . . . enforce* an ordinance that conflicts in any manner with this act . . . ." (Emphasis added). We cannot imagine any clearer expression of legislative intent. The plain language of the RTFA precludes enforcement of an ordinance that conflicts with the RTFA. Although plaintiff argues that application of the RTFA under these circumstances will prevent local municipalities from "get[ting] their arms around" farms operating in existing or developing residential areas, the fact that the statute appears to be unwise or unfair to plaintiff is insufficient to permit judicial construction. The wisdom of a statute is for the determination of the Legislature, and the law must be enforced as written. *Smith v Cliffs on the Bay Condo Ass'n,* 463 Mich 420, 430; 617 NW2d 536 (2000). "A court may not inquire into the knowledge, motives, or methods of the Legislature," *Fowler v Doan,* 261 Mich App 595, 599; 683 NW2d 682 (2004), and may not impose a construction on a statute on the basis of a policy decision different from that chosen by the Legislature, *Robertson v DaimlerChrysler Corp,* 465 Mich 732, 752; 641 NW2d 567 (2002). Accordingly, the RTFA no longer allows township zoning ordinances to preclude farming activity that would otherwise be protected by the RTFA. Rather, any township ordinance, including a zoning ordinance, is unenforceable to the extent that it would prohibit conduct protected by the RTFA.[8]

---

[8] This conclusion does not leave a local government without recourse if it has public safety concerns that it seeks to address by ordinance. MCL 286.474(7) provides:

A local unit of government may submit to the director a proposed ordinance prescribing standards different from those contained in generally accepted agricultural and management

### C. LACHES

Defendants also argue that plaintiff's attempt to enjoin them from continuing the poultry operation is barred by the equitable doctrine of laches. Laches may apply to bar an attempt to abate a zoning ordinance violation. *Yankee Springs Twp v Fox*, 264 Mich App 604, 612; 692 NW2d 728 (2004). However, it would be premature, at this juncture, for us to consider whether plaintiff's attempt to abate the poultry operation is barred by the doctrine of laches. By entering judgment in plaintiff's favor, the trial court must have implicitly concluded that plaintiff's claim was not barred by the doctrine of laches as argued by defendants below. But the trial court did not articulate any factual findings to support such a conclusion. This is critical because, while a trial court's decisions regarding application of the equitable doctrine of laches are reviewed de novo, its findings of fact supporting such a decision are reviewed for clear error. *Id*. at 611. Application of the doctrine of laches requires a passage of time and a change in condition that would make inequitable the enforcement of a claim against a defendant. *Id*. at 612. In this regard, defendant has the burden of proving that lack of due diligence by plaintiff prejudiced defendant. *Id*. Without findings of fact regarding when plaintiff was first placed on notice of the poultry operation and the effect on defendants of being forced to discontinue this activity, we cannot determine whether defendants would be prejudiced so that it would be inequitable to allow plaintiff to enforce a claim to enjoin the poultry operation. Accordingly, we direct the trial court to address the issue of laches on remand if it is necessary to do so in order to properly resolve this case.

practices if adverse effects on the environment or public health will exist within the local unit of government.

## D. ADMINISTRATIVE REMEDIES

Defendants further argue that they were entitled to summary disposition because plaintiff failed to exhaust its administrative remedies under the RTFA by filing a complaint with the MDA regarding the poultry operation. Whether a court has subject-matter jurisdiction is a question that this Court reviews de novo. *Papas v Gaming Control Bd,* 257 Mich App 647, 656-657; 669 NW2d 326 (2003). We reject this argument because it presupposes that defendants' activities were clearly protected by the RTFA. However, as set forth above, there is a genuine issue of material fact regarding whether defendants were engaged in commercial activity as required for the RTFA to apply. Thus, defendants could not have been entitled to summary disposition based on plaintiff's failure to exhaust administrative remedies under the RFTA given that it has not been definitively established that the RTFA applies to the poultry operation at issue.

## E. FAILURE TO STATE A CLAIM

Finally, defendants argue that the trial court erred by failing to grant their motion for summary disposition under MCR 2.116(C)(8) on the ground that plaintiff failed to state a claim on which relief could be granted. We disagree. In considering whether a party is entitled to summary disposition under MCR 2.116(C)(8), we assume that all factual allegations in the nonmoving party's pleadings are true and decide if there is a legally sufficient basis for the claim. *Salinas v Genesys Health Sys,* 263 Mich App 315, 317; 688 NW2d 112 (2004). Plaintiff's complaint alleged in part that a poultry coop on defendants' property constituted a nuisance per se under MCL 125.224. It is undisputed that the township zoning ordinance would prohibit the poultry operation

if defendants are not protected under the RTFA. If, as a result of further factual development or resolution by trial or otherwise of disputed factual issues, defendants ultimately prevail on remand in their argument that the relevant township ordinance is preempted by the RFTA, this would not mean that plaintiff failed to state a claim for the purposes of MCR 2.116(C)(8), but that defendants established a meritorious defense to the claim.

We reverse the trial court's order granting summary disposition in plaintiff's favor, affirm the order denying defendants' counter-motion for summary disposition, and remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction.