*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHARON KAY and MUSTAFA KAY,

Plaintiffs-Appellees,

UNPUBLISHED
September 10, 2019

v

COVERT PATRICK KELLEY, REGINA MARIE
KELLEY, and CLARABELLE KELLEY,

No. 344452
Wayne Circuit Court
LC No. 17-004328-CZ

Defendants-Appellants.

Before: BORRELLO, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

Defendants, Covert Patrick Kelley, Regina Marie Kelley, and Clarabelle Kelley, appeal as of right the judgment quieting title to a 50-foot parcel of property in favor of plaintiffs, Sharon Kay and Mustafa Kay, following entry of an order granting summary disposition in favor of plaintiffs and the denial of defendants' motion for reconsideration. We reverse and remand for proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiffs and defendants were neighbors, business associates, and friends, but the business relationship deteriorated. Plaintiff, Mustafa Kay, purchased the assets of the business that he shared with defendant, Covert Patrick Kelley, and dissolved the existing corporation, and the parties' personal relationship also ended. With regard to the neighboring properties, defendants used and maintained a 50-foot strip of land at the southern edge of plaintiffs' property, but claimed that plaintiffs suddenly objected to the use of this parcel of property in 2016. The dispute over the 50-foot strip of land is the subject matter of this litigation.

Historically, defendants and their relatives owned the properties located at 49770 and 49774 Ann Arbor Road in Plymouth, Michigan. In 1972, defendant, Clarabelle Kelly, owned 49774 Ann Arbor Road. In 1976, defendant Covert Patrick Kelley and his wife, defendant Regina Marie Kelley, purchased this property from defendant Clarabelle Kelley, with a quitclaim deed providing that the married couple held this property with Clarabelle as joint tenants with full rights of survivorship. Defendant Covert's grandmother, Mable C. Williams, owned the

-1-

49770 Ann Arbor Road residence, and in 1972, upon her death, the property was inherited by three individuals, including defendant Clarabelle Kelley. Pursuant to a letter written by attorney J. Rusling Cutler addressed to the township, it was the intent of the estate beneficiaries to convey a parcel of Williams' property to defendant Clarabelle Kelley to allow her to have sufficient land to obtain a building permit for construction of a garage. Although the letter referenced a conveyance of "not less than 50 feet from North to South and not less than 337.27 feet along its North Line," a deed was never recorded, but the township apparently allowed the improvements. Ultimately, the Williams property located at 49770 Ann Arbor Road was sold to the Kulicks, and plaintiffs[1] purchased the property from the Kulick Estate in 1995.

Defendant Covert testified that he maintained the disputed parcel of property by seeding, cutting, and fertilizing the grass, pulling weeds and removing poisonous sumac, and installing a sprinkler system with five of the sprinkler heads placed south of the alleged boundary line. These acts continuously occurred from the 1970s until the litigation was filed, and then the police directed him to stop maintaining the lawn. Defendant Covert also testified that he installed concrete pads, a driveway, and a generator in 2003, but at the time of the installation, he was unaware that the encroachments were technically placed on plaintiffs' property.

Defendant Regina Kelley testified that she married defendant Covert in 1974, and the couple lived at 49774 Ann Arbor Road for 41 years, or continuously since 1976. Defendant Regina believed that they owned the disputed property where the generator, driveway, and pavers were located because of representations made by her mother-in-law, defendant Clarabelle Kelley. She denied ever seeking permission to install the encroachments, including the generator, on plaintiffs' property and further could not recall discussing with plaintiff Sharon Kay that the generator was placed on her land. Defendant Regina was unaware of when the encroachments were installed and referred to her husband for the time frames.

Defendant Regina also testified that before plaintiffs purchased the neighboring property, it was owned by the Kulicks. Defendants were friendly with the Kulicks and cut the lawn north and south of the wetlands, particularly after Mr. Kulick had his leg amputated in the early 1980s. After plaintiffs purchased the property, defendant Regina continued to mow the lawn for plaintiffs for almost a year because they worked on the home and did not live there. Although plaintiffs eventually began to cut their own lawn, they did not cut the portion north of the wetlands. Rather, defendant Regina continued to cut the property on her side of the wetlands.

In 2016, plaintiffs' counsel sent written correspondence objecting to defendants' "trespass" upon their property. In response, defendants' counsel wrote that defendants' actions could not constitute a trespass because any entry was permissive, but further cited defendants' ownership of the disputed parcel. In March 2017, plaintiffs filed suit to quiet title to the property, alleging that they were the record owners of the disputed parcel. Defendants filed a counter complaint, claiming title to the disputed parcel through the doctrines of acquiescence and

---

[1] Plaintiffs did not submit their own deposition testimony or affidavits to offer their position on the use of the property by themselves and neighboring landowners.

adverse possession. Ultimately, the trial court granted plaintiffs' motions for summary disposition, concluding that the statutory period for adverse possession could not be established when the installation of the generator and concrete pads occurred in 2003, and plaintiffs objected to the encroachments in 2016. Further, the court held that defendants failed to show hostile possession in light of the attorney correspondence citing permissive use. With regard to the claim of acquiescence, the trial court held the doctrine required a mistake regarding the true boundary line and the 1972 letter citing a transfer of the disputed parcel did not contain a sufficient description of the property. From this decision, defendants appeal.

## II. STANDARDS OF REVIEW

A trial court's ruling on a motion for summary disposition is de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018).[2]

When the truth of a material factual assertion made by a party is contingent upon credibility, summary disposition should not be granted. *Foreman v Foreman*, 266 Mich App 132, 136; 701 NW2d 167 (2005). The trial court may not make factual findings or weigh credibility when deciding a motion for summary disposition. *In re Handelsman*, 266 Mich App 433, 437; 702 NW2d 641 (2005). When the evidence conflicts, summary disposition is improper. *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003). Inconsistencies in statements given by witnesses cannot be ignored. *White v Taylor Distrib Co*, 482 Mich 136, 142; 753 NW2d 591 (2008). Where evidence offered in the trial court is capable of supporting different conclusions and creates a question of fact, summary disposition is inappropriate. See *Shelby Charter Twp v Papesh*, 267 Mich App 92, 103; 704 NW2d 92 (2005). There is no prohibition on contradicting statements that "were not made under oath or as part of legal proceedings." *Id*.

## III. ACQUIESCENCE

Defendants first contend that the trial court improperly granted summary disposition to plaintiffs because they presented substantial evidence to create a genuine issue of material fact regarding application of the doctrine of acquiescence. We agree.

---

[2] Although the trial court stated that it granted summary disposition of the counter claim for failure to state a claim, MCR 2.116(C)(8), the trial court reviewed the documentary evidence to reach the conclusion that defendants did not meet the burden of proof for acquiescence and adverse possession. "Only the pleadings may be considered when the motion is based on subrule (C)(8) or (9)." MCR 2.116(G)(5).

"The doctrine of acquiescence provides that, where adjoining property owners acquiesce to a boundary line for a period of at least fifteen years, that line becomes the actual boundary line." *West Mich Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 511-512; 534 NW2d 212 (1995). "The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). A claim premised on acquiescence must be proven by a preponderance of the evidence, a standard less stringent than the clear and cogent evidence standard necessary to show adverse possession. *Id*. Contrary to adverse possession, a claim of acquiescence does not require that the possession be hostile or without permission. *Id*. Additionally, the "acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Id*.

There are three types of acquiescence: (1) acquiescence for the statutory period; (2) acquiescence following a dispute and agreement; and (3) acquiescence arising from intention to deed to a marked boundary. *Sackett v Atyeo*, 217 Mich App 676, 681; 522 NW2d 536 (1996). Acquiescence for the statutory period occurs when a boundary line was not correctly and accurately affixed, but the parties acquiesced by fixing the line for fifteen years. *Pyne v Elliott*, 53 Mich App 419, 426; 220 NW2d 54 (1974). This is the theory pursued by defendants.

In the present case, defendants presented documentary evidence that in 1972, defendant Clarabelle Kelley became aware that alterations to 49774 Ann Arbor Road could not occur because there was insufficient property available to meet township setback requirements. Consequently, while defendant Clarabelle Kelley held an interest in the 49770 Ann Arbor Road property through inheritance (property that would later be deeded to plaintiffs in 1995), it was her intention to convey adequate property to build a garage. Accordingly, attorney Cutler wrote a letter to the township advising of the estate resolution to convey a portion of the property in order to achieve the alterations to defendants' property. Although defendant Covert acknowledged that he was only 16 years old at the time, he testified that the township granted permission, and the alterations to the property occurred in 1972 and 1978. Additionally, defendant Regina testified that she mowed and cared for the vegetation in the disputed parcel because of defendant Clarabelle's representation regarding their ownership of the property at issue. Furthermore, when the successor purchaser to the neighboring property, Mr. Kulick, suffered from an amputation, defendant Regina mowed his property. Despite the fact that the Cutler letter did not contain a parcel description or metes and bounds, the testimony offered by defendants provided a context for the property at issue. Moreover, this writing did state that: "This parcel to be conveyed shall not be less than 50 feet from North to South and not less than 337.27 feet along its North line." Thus, the Cutler letter did contain a description of the size of the parcel and its general location.

Therefore, defendants proffered that the disputed property was to be conveyed in the resolution of the prior owner's estate. The documentation shows that a conveyance was contemplated, yet ultimately did not occur. But nonetheless, defendants testified that the improvements occurred with township approval, and any deficiencies in the Cutler letter regarding descriptions could be resolved by examining the facts and circumstances of the alterations to the property and defendants' resulting maintenance. In light of the conflict between the Cutler statement regarding what was to transpire with regard to the property's written transfer and defendants' testimony that they managed the property as if the transfer had

occurred, summary disposition was inappropriate. *Lysogorski*, 256 Mich App at 299. Moreover, defendant Covert testified that he placed a sprinkler system, concrete pads, generator, and driveway in the disputed area because of his belief that ownership of the disputed 50-foot area was acquired. Although the generator and concrete were not placed until 2003, his testimony, if deemed credible, was that the sprinkler system and lawn maintenance occurred in the 1980s, and therefore, he would have acquired title for the statutory period before plaintiffs' objection in 2016. Finally, the contention that defendants' counsel conceded that defendants' use was permissive in his 2017 pre-litigation letter is irrelevant to the claim of acquiescence because hostility and permission are not requirements of the claim. *Killips*, 244 Mich App at 260. Accordingly, the trial court improperly granted summary disposition of the acquiescence claim because there were material factual disputes regarding defendants' use of the property dating back to the 1970s.

## IV. ADVERSE POSSESSION

Defendants next contend that the trial court improperly granted summary disposition of their claim to the disputed parcel through the doctrine of adverse possession because the evidence created genuine issues of material fact. We agree.

To establish a claim of adverse possession, a party must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period. *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). The statutory period is 15 years. MCL 600.5801(4). "Michigan courts have followed the general rule that the expiration of the period of limitation terminates the title of those who slept on their rights and vests title in the party claiming adverse possession." *Gorte v Dep't of Transp*, 202 Mich App 161, 168; 507 NW2d 797 (1993). Successive periods of adverse possession by different parties may be tacked to satisfy the 15-year statutory period provided there was privity of estate. *Killips*, 244 Mich App at 259.

Hostility is satisfied by nonpermissive use of the property inconsistent with the true owner's rights and does not require ill will or maliciousness. *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006). "Where a landowner possesses the land of an adjacent owner with the intent to hold to the true line, the possession is not hostile and cannot establish adverse possession." *Gorte*, 202 Mich App at 170. The fact that a party has a mistaken belief regarding the true boundary line does not preclude a claim for adverse possession:

> By contrast, where a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established. Simply being mistaken with regard to the true boundary line, however, does not defeat a claim of adverse possession. *DeGroot v Barber*, 198 Mich App 48, 53; 497 NW2d 530 (1993). As noted by this Court in *DeGroot*, it would be unjust to limit the application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake, thereby rewarding the thief while punishing the person who was merely mistaken. *Id*. As in *DeGroot*, plaintiffs in this case appear to have intended to hold to particular boundaries, but also believed that the boundary represented the

true line. Plaintiffs therefore fall within the second group of adverse possessors in that they respected a line that they believed to be the true boundary, but which proved not to be the true boundary. *Id*. [*Gorte,* 202 Mich App at 170.]

Plaintiffs asserted that defendants could not present clear and cogent evidence to support adverse possession because the letter drafted by their counsel admitted that defendants use of the disputed parcel was permissive, and the trial court relied on this letter to grant summary disposition.

On December 8, 2016, plaintiffs' counsel, Joseph M. Xuereb, sent a letter to defendants' counsel, Sandra D. Glazier, to "address issues relating to the easement, as well as your clients' [defendants] numerous trespasses onto my clients' [plaintiffs] property." The letter proceeded to describe the character of the property, plaintiff Sharon Kay's desire to keep it in a natural state because of her role as a conservationist, and defendants' removal of trees and vegetation. In response to this letter, defendants' counsel, Patrick A. Guentner, stated as follows:

> My clients deny that they have trespassed or are currently trespassing on your client's property and your clients are estopped from making any such allegations. My clients cannot trespass since they were given permission by your clients and my clients have always relied on an additional 50 feet of land that was attached to their parcel by an agreement reached in 1972 whereby Clarabelle Kelley was granted said 50 feet by her heirs at law and said 50 feet attached to my client's property. Your clients had notice of this not only from conversation between Mr. Kelley and Mr. Kay but documentation supporting Mr. Kelley's position has been on file with the township since 1972 and has been used to grant variances in the past (see attached Exhibit A).
>
> Even if your clients deny having notice of the 50 feet that is attached to Mr. Kelley's property; your clients were aware of where Kelley Brothers, LC was installing the generator and gave my clients permission to put the generator in its current location. Mr. Kay and Mr. Kelley spoke when the generator was installed and Mr. Kay consented to its placement. Further, Kelly Brothers LC installed the concrete slab in its current location. Your clients acquiesced to the placement of everything contained in your correspondence.

Plaintiffs' contention, that adverse possession cannot be established because defendants' counsel admitted that defendants' use was permissive, is disingenuous. Defense counsel's letter was written before this property lawsuit was filed, and the letter was drafted to address the claims of inappropriate entry and maintenance of the disputed property. It is unclear if defense counsel admitted that all access by defendants upon the property was permissive or only addressed the acts which were complained of in the original letter. More importantly, plaintiffs omit the remainder of the letter. That is, defense counsel asserted that the access was permissive *and* defendants claimed title to the 50 feet of property since 1972. Because this pre-litigation letter exchange is capable of supporting different conclusions and was initiated to address a claim of trespass, it does not negate the hostility element of adverse possession. See *Shelby Charter Twp,* 267 Mich App at 103.

Additionally, plaintiffs contend that defendants were mistaken regarding their ownership of the property, and therefore, they cannot establish the hostile requirement for adverse possession. However, a mistaken belief in the true boundary line will not negate a claim of adverse possession. *Gorte*, 202 Mich App at 170. Because there was a factual dispute regarding defendants exercise over the disputed property since the 1970s and whether tacking applies, the trial court improperly granted summary disposition in favor of plaintiffs.[3]

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Having prevailed in full, defendants may tax costs.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

---

[3] Plaintiffs did not dispute all requirements to support a claim of adverse possession, but limited their challenge to hostile and permissive use for the 15-year period, and our analysis was in accordance with the challenge. Additionally, plaintiffs repeatedly addressed that it held recorded title to the disputed parcel, and defendants presented no documentary evidence to support title to the property. This argument ignores the fact that marketable title may be acquired through adverse possession or acquiescence. See *Barnard v Brown*, 112 Mich 452, 455-456; 70 NW 1038 (1897).